# THE CITY OF CHICAGO

*v.*

# MATTHEW LAFLIN *et al.*

1. RIPARIAN PROPRIETOR—*his title—how far it extends—and rights of defined.* Where certain lots bordering on the Chicago River, were granted to a party by the government, and no reservation was made in such grant, whereby the grantee was confined to the water's edge, in such case the title of the owner extends to the thread or central line of the stream, and he has the right to erect and maintain wharfs and docks on its bank, and use and enjoy it in every

legal manner, provided, he does not obstruct navigation, or impair the rights of others.

2. NUISANCE. And in such case, where the owners of such lots had erected docks thereon, and enjoyed the use of the same for a period of over twenty-five years, without complaint or interruption from any source, even if they were not riparian proprietors, and their boundaries did not extend beyond the water's edge ; after such long acquiescence, the corporate authorities of the city cannot declare them a nuisance, which, if they are a nuisance, have become so by the act of the city.

3. SAME—*compensation required.* But even if the corporate authorities had the power to declare them a nuisance and require their removal, they having become a nuisance by the act of the city, before such exercise of power could be had, compensation to the owners must be made.

4. FORMER DECISIONS. The cases of *Middleton* v. *Pritchard*, 3 Scam. 570 ; *The People* v. *The City of St. Louis*, 5 Gilm. 351 ; *Canal Trustees* v. *Havens*, 11 Ill. 554, and *Ensminger* v. *The People*, 47 Ill. 384, cited and considered.

APPEAL from the Superior Court of Chicago.

The opinion states the case.

Mr. S. A. IRVIN, for the appellant.

Mr. A. W. ARRINGTON and Messrs. DENT & BLACK, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Appellees were the owners of a wharf on the Chicago river, on lots owned by them, and were about to commence repairs on it in the spring of 1867, when the city filed a bill to restrain and prevent their making such repairs, and to have them declared a nuisance. Appellees filed an answer, denying the allegations of the bill; setting up that they were the owners of the lots in fee, in front of which they were building wharfs or docks which are the obstructions of which the city complains. That they paid more for the lots because they had wharfage

174        CITY OF CHICAGO *v.* LAFLIN *et al.*        [Sept. T.,

Opinion of the Court.

privileges; that the river was shoal water and they only placed the wharfs so far in the river as was necessary to enable vessels to approach them; that the wharfs were first built in 1840, and they have respectively a right to maintain them; that they were only in the act of repairing or rebuilding them when enjoined; that they had used them since 1840, and insist that there is a complete remedy at law, and set up the statute of limitations. On the hearing in the court below, a decree was rendered dissolving the injunction and dismissing the bill, and the case is brought to this court on appeal.

It appears that the Secretary of War laid out and platted the Fort Dearborn reservation for the United States, into an addition to the city of Chicago, on the seventh day of June, 1839. The plat was acknowledged and recorded. The lots were sold by the government and patents were issued to the purchasers, and appellees derive title from that sale, and by stipulation it is agreed that they are the owners of the lots upon which the wharfs are situated.

In the explanation of the plat, the Secretary of War says:

" The width of the rear of the water lots bounded on the Chicago river, is determined and established by posts set at the intersection of the lines of the lots and streets with meanders of the river, as shown by the notes entered upon the meandered lines."

It appears from the evidence that these wharves were erected as early as in 1840 and 1841, and have been used and maintained by the respective owners ever since. It also satisfactorily appears that these docks did not cause any obstruction to the navigation of the river until the city built the Rush street bridge, and dredged the river, since which time, the navigation has not at that point been as convenient as it was previously. These facts, then, present the question, whether appellees are riparian owners of these lots, and as such, had the right to

erect and maintain such wharfs, and the further question, whether the city by its own acts, in the erection of the bridge and dredging the river, rendered the wharfs which were previously innoxious, a nuisance.

In the case of *Middleton* v. *Pritchard*, 3 Scam. 570, this court held that the owner of land bounded by a stream not navigable in the technical sense of the term, held the land to the center of the thread of the stream, and that the water and soil under it, were exclusively that of the riparian owner to that point, and it was also held that the Mississippi river was not a navigable stream in a legal sense, and that this right was subject to the public easement of passing over the stream. That a grant to any individual bounded by such a stream, carried the ownership to its center current, by the rules of the common law.

In the case of *The People* v. *The City of St. Louis*, 5 Gilm. 351, it was held that the several States may, within their own jurisdiction, do whatever they please with this river, so as they do not infringe upon the rights of others, and leave a free and commodious passage. That the State might change the current of the Mississippi river, or even stop up some of its confessedly navigable channels, whenever they find it necessary to their own well being, the same as any other highway, taking care that they leave a free passage to those who have a right to navigate it, and if in doing so, private property should be damaged, compensation would have to be first made to the owner. And in the same case it was said that riparian owners have a right to make erections on their own land, which do not infringe upon a public easement, but have no right to erect a nuisance in a public highway.

Again in the case of *Canal Trustees* v. *Havens*, 11 Ill. 554, it was said that "By the common law, a grant of land bordering on a highway or river, carried the exclusive right and title in the highway or river to the center thereof, subject to the right of passage in the public, unless the terms of the grant

176    CITY OF CHICAGO *v.* LAFLIN *et al.*    [Sept. T.,

Opinion of the Court.

clearly indicated an intention on the part of the grantor to confine the grantee to the edge or margin. In such case, the highway or river is regarded as the boundary or monument, and the purchaser takes to the middle of the monument as a part and parcel of his grant."

In the case of *Ensminger* v. *The People*, 47 Ill. 384, it was held that riparian owners bordering on the Ohio river, have the right to erect and maintain wharves and docks on its banks, between high and low water mark, so they do not obstruct navigation or impair the rights of others. That on such streams the public have no right to land their cargoes on the land of the riparian owner without his consent; that such owner might charge a reasonable amount for dockage and wharfage.

From these decisions it will be observed, that the rule is well settled, that the title of a riparian owner extends to the middle thread of the stream if it is called for as a boundary, and if he is the owner, subject, it is true, to the public easement, and there is no imaginable reason why he may not use and enjoy it as his own in any legal manner, provided he does not obstruct or impair the enjoyment of the easement by the publiic.

In this case, the United States Government granted these lots, bounded by the Chicago river, and made no reservation. It therefore follows, that the grantees became the owners of the water and soil to the center or thread of the stream, subject to the easement the public had to navigate it, and they had the undoubted right to make these erections, if in so doing, they did not impair the easement of the public, and the evidence shows that they in nowise rendered it less commodious. Again, they had enjoyed the use of these wharves for over a quarter of a century, and so far as we can see, without complaint or interruption, and if they had been a nuisance, we may readily suppose, that those engaged in the vast commerce of the river at that point, fully alive to their interests and tenacious of their rights, would not have slumbered so long before endeavoring to enforce them.

Even if these owners were not riparian proprietors, and their boundaries did not extend beyond the water's edge, we do not see that the general government granted or dedicated the bed of the river to the city, and the general government has not complained of these erections, and after such long acquiescence, the city cannot now declare them a nuisance. And even if the State has delegated its rights to the city to change the channel of this stream, and we have been referred to no law which grants the power, it could exercise no higher or greater power than the State; and we have seen, that if the State exercises such power and it injures the rights of individuals, compensation must first be made. It would be monstrous that the city should at pleasure, make changes in this stream so as to render buildings on the wharfs an obstruction, and then require their removal without compensation. Such power would be more vast and absolute than can be exercised by the State itself. The city government is created, and has its powers delegated for the better protection of individual rights, and not that they may be disregarded or destroyed.

If this has became a nuisance, it was by the act of the city, and the appellees cannot be made responsible for their acts. In no point of view, in which we have been able to examine this case, do we see that the court below could have regarded these wharves as a nuisance created by the owners, and hence it would have been error to enjoin their reparation, or to have decreed their removal. For these reasons, the decree of the court below must be affirmed.

*Decree affirmed.*