BURTON W. POTTER *vs.* WILLIAM HOWE & others.

Worcester. Oct. 1, 1885. — March 31, 1886. FIELD & C. ALLEN, JJ., absent.

A bill in equity, to restrain the maintenance of a dam, whereby the water of a great pond may be raised above its natural level at high water, and of a sluice-way, whereby the water may be drawn off below its natural level at low water, may be maintained by a person suffering special and peculiar damage therefrom; and a person whose land is flowed by means of such a dam, or whose land is cut off from the pond, when the water is lowered, by reason of a strip of land belonging to the State intervening between his land and the water, suffers special damage within this rule.

A bill in equity was brought to restrain the maintenance of a dam, whereby the water of a great pond was raised above its natural level at high water, and of a sluiceway, whereby the water was drawn off below its natural level at low water; but contained no prayer for damages. The plaintiff did not ask for damages, at the hearing before the master to whom the case was referred, until after the first draft of the master's report showed that the amount of damages had not been passed upon by him. The evidence before the master showed

damage to the plaintiff, but it was not directed to the amount of damages with reference to a finding upon it; and the amount found by the master was a small sum in gross, which appeared to include matter not the subject of special damages. *Held,* that the decree should be confined to the relief prayed for; and that the plaintiff must resort to an action at law for redress in damages.

W. ALLEN, J. This is a bill in equity, filed November 3, 1881, in which the plaintiff, the owner of land bounding on a great pond, seeks to have the defendant enjoined against raising the waters of the pond above the natural high-water mark, and from drawing them off below the natural low-water mark of the pond.

The facts, so far as they are material to the decision, are these: The plaintiff owns a farm bounded about one hundred rods on a great pond, which has an area of about one hundred acres. The defendants own a strip of land about four rods wide on the pond at the only outlet of it, upon which they maintain a dam, which raises the water of the pond above high-water mark, and, in connection with it, have excavated the outlet so that they draw off the water below low-water mark. The defendants, by means of the dam, use the pond as a reservoir to feed a mill-pond which they own upon a stream not the outlet of the pond, and not connected with it except by an artificial channel or canal leading from the outlet stream to another stream on which are the defendants' mill-pond and mills. The defendants have maintained a dam at the outlet, and used the water by means of the canal to feed their mill-pond, for more than twenty years before the commencement of this suit; but in 1873 the dam was raised so as to raise the water above the natural level of the pond at high water; and after that time the channel of the outlet was deepened so as to reduce the water below the natural level at low water. The plaintiff does not complain of the use of a dam and gate by the defendants to regulate the retention or discharge of the water between its natural levels; but of a dam and outlet which raise and lower the water of the pond beyond its natural levels. There can be no ground for the contention that the defendants have acquired, as against the plaintiff, the latter right by prescription or user, or that the plaintiff is bound by the actual condition of the pond at the time he took his deed. *Paine* v. *Woods*, 108 Mass. 160.

As the defendants' mills are not on the pond or any outlet of it, the mill acts do not apply, even if they would apply in any case to the waters of a great pond. Pub. Sts. *c.* 190, § 1. *Bates* v. *Weymouth Iron Co.* 8 Cush. 548.

It is not necessary to consider particularly the rights of owners of land bounding on a great pond in the waters of the pond. It is enough to say, in a general way, that great ponds are held for the common and public use of all, and the littoral owners upon them have no private property in the waters of the pond, or in the soil under them, below the natural low-water mark. *Paine* v. *Woods, ubi supra.* It may be assumed, too, that the public right in the pond is not confined to such uses as fishing, bathing, passing over its surface in boats or on the ice, and taking ice from it, but includes the use of the water for domestic, agricultural, and manufacturing purposes. The defendants contend that there is a public right to use the water for manufacturing purposes, which involves not only the right to transport the natural water of the pond by artificial means to an unnatural place, but also to hold back and store the water in times of abundance above its natural level, and artificially to draw it off in times of scarcity below its natural level. This case does not present any question as to the right of the public so to use the water between its natural levels, but only the right artificially to detain it above high-water mark, and to draw it away below low-water mark.

In regard to raising the water, the public right is immaterial, and need not be considered. If the defendants have the right, as against the public, to enlarge and deepen the pond, so that an information or indictment in behalf of the public will not lie for merely raising the water irrespectively of particular consequences, they have no right thereby to flow the land of the plain· tiff ; and they cannot raise the water above its natural height without violating the private right of the plaintiff in his land. The evidence shows that the defendants have, by their dam, raised the water of the pond more than a foot above its natural high-water level, and that they threaten to continue to do so as they have occasion. It is immaterial whether they do or do not thereby commit a public nuisance ; it is a private nuisance to the plaintiff, which entitles him to an injunction, even if the damages occasioned are but nominal.

Withdrawing the water of the pond below low-water mark is an act of a different character as regards the plaintiff. It is in itself an unreasonable use of the pond, and an interference with the reasonable use of it by the public. A common right to withdraw the water of the pond below its natural level, by artificial means, is inconsistent with the common right to the use of the pond as a pond, and there can be no doubt that, for any substantial abstraction of the water, an information or indictment would lie for the public wrong. But the plaintiff cannot have redress by private suit for the violation of a common and public right; he must show that he has sustained some special and peculiar damage thereby, and that thus some private right of person or property has been infringed. The master found, and the evidence shows, that, by the lowering of the water by the defendants, about three rods of the bottom of the pond is exposed next to the plaintiff's land; that is, that the water line is moved out for this distance into the pond from the natural low-water line. In the natural state of the pond, the plaintiff's land is bounded upon the water; his land extends to low-water mark, and he has at all times a shore line upon the pond. By the withdrawal of the water by the defendants, a strip of land, the title to which is in the State and the use in the public, is interposed between his land and the water of the pond. Whether depriving him in this way of his natural boundary upon the water would of itself import special damages, we need not consider, because, in several particulars, continuing special damages are occasioned to him. In order to enclose his land, he is obliged, by the removal of the natural water line, either to maintain a fence on the one hundred rods between his land and the bed of the pond, or to extend his side fences several rods over land which does not belong to him, and, as such fences are destroyed by the action of ice in the high water of winter, these must be renewed yearly.

So he had a right to prepare his land for the better enjoyment of his public rights in the pond, and to this end he built a boathouse adapted for use in the natural condition of the water, with the use of which the defendants have no right to interfere by taking the water from it. We think that these facts are sufficient to show that the plaintiff has sustained such special and peculiar damages by acts of the defendants, which were against

common and public right, as to entitle him to relief by injunction. *Haskell* v. *New Bedford*, 108 Mass. 208. *Brayton* v. *Fall River*, 113 Mass. 218.

The plaintiff asks for a decree for damages; but there is no prayer for damages in his bill, and he did not ask for them at the hearing until after the first draft of the master's report showed that the amount of damages had not been passed on by him. While the evidence before the master showed damage to the plaintiff, it was not directed to the amount of damages with reference to a finding upon it, and the amount found by the master is a small sum in gross, which appears to include matter not the subject of special damages. Under these circumstances, we think that the decree should be confined to the relief prayed for, and the plaintiff left to his action at law for redress in damages.

The plaintiff is entitled to a decree, restraining the defendants from maintaining their dam so as to raise the water of the pond above its natural level at high water, and from drawing off the water below its natural level at low water, as prayed for in his bill.

*Decree for the plaintiff.*

*W. S. B. Hopkins & B. W. Potter*, for the plaintiff.
*C. A. Merrill*, for the defendants.