JOHN E. BALLARD

*v.*

HENRY G. STRUCKMAN.

*Filed at Ottawa January 19, 1888.*

OVERFLOWING LANDS *of another—by a mill-dam—prescriptive right, after twenty years.* Where the owner of a mill, and his grantors, have maintained a dam of a given height across a stream for over twenty years, and have exercised the uninterrupted enjoyment of the privilege to overflow the lands of another situated above such dam, such mill owner will have acquired a prescriptive right to maintain his dam at such height and overflow the lands above, and the upper land owner can not enjoin him from rebuilding such dam to the same height when washed out by a freshet.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Mr. CHARLES WHITNEY, and Messrs. COOK & UPTON, for the appellant:

When an easement to flow water back on lands is claimed by adverse enjoyment, the whole burden of proof is on the claimant. Gould on Waters, sec. 341, p. 552; *Haight* v. *Price,* 21 N. Y. 241; *Carlisle* v. *Cooper,* 19 N. J. Eq. 256; *American Co.* v. *Bradford,* 27 Cal. 360.

By the occasional use of short boards, raising the height of the dam temporarily, no right to maintain a permanent dam to the same height was being acquired. Gould on Waters, sec. 337; Angell on Water-courses, secs. 378, 379; Wood on Nuisances, secs. 322-324; *Marchy* v. *Shuts,* 29 N. Y. 346; *Pierce* v. *Travers,* 97 Mass. 306; *Branch* v. *Doane,* 17 Conn. 402; *Carlisle* v. *Cooper,* 19 N. J. Eq. 257; 21 id. 578.

The acquiescence of the owner of the servient estate is an indispensable condition upon which a right to overflow can be acquired by prescription, and is clearly defined in *Chicago and Northwestern Railway Co.* v. *Hoag,* 90 Ill. 339.

Mr. HIRAM H. CODY & SON, and Mr. ELBERT H. GARY, for the appellee:

As to the right to enjoin a private nuisance, see 2 Story's Eq. sec. 925 ; High on Injunctions, sec. 486 ; Gould on Waters, secs. 416, 509 ; *Dunning* v. *Aurora*, 40 Ill. 481 ; *Bliss* v. *Kennedy*, 43 id. 74 ; *Stolp* v. *Hoyt*, 44 id. 219 ; *Parker* v. *Water Co.* 2 Black, 545.

The acquiescence of complainant and his grantees for forty years in the maintenance of the dam at six and a half feet, created an equitable estoppel. *Water Power Co.* v. *Veght*, 21 N. J. Eq. 478 ; *Carlysle* v. *Stevenson*, 3 Md. 506 ; High on Injunctions, secs. 494-496, 505 ; *Vail* v. *Mix*, 74 Ill. 127.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill for an injunction, brought by John E. Ballard, in the circuit court of Lake county, to enjoin Henry G. Struckman from rebuilding a certain mill-dam across the Des Plaines river, to a greater height than four and a half feet.

It is alleged in the bill, that the defendant owns and occupies land lying along the river, below the land of complainant; that on the land of defendant is a mill owned and operated by him ; that the dam across the river has been located in the same place for several years ; that the dam causes the waters of the river to flow back on the lands of complainant, to his injury and damage ; that in or about 1875 the dam stood at the height of about four and a half feet, which height of about four and a half feet, or less, was the height at which the dam had stood ever since the erection thereof ; that up to 1875 the dam had never exceeded in height four and a half feet ; that in or about 1875, while the dam and mill, and land on which the same stand, were owned by Diedrich Struckman, father of defendant, and while defendant alone, or in company with his father, was in possession and occupancy of the dam and mill, the dam was repaired and raised in height about two feet, by

defendant, or his father, or both; that when the dam was so raised in height, the increasing of the height thereof necessarily took and damaged, and did take and damage, a large portion of complainant's land, then owned and occupied by him as his homestead and farm, by the water of the river setting back and overflowing the same to a much greater height and extent than it ever theretofore had been overflowed on account of said dam; that complainant's land, from year to year, since 1875, has been taken and injured to a much greater extent than ever prior to the raising of the dam; that the dam was increased in height without the consent of complainant, and against his objection, made to defendant and his father; that complainant's damages to his land, by reason of the increased height of the dam, were not released by him, or ascertained or assessed by a jury, as required by law, or in any way whatever. It is also alleged in the bill, that a portion of the dam has recently washed out, and the defendant is proceeding to repair and raise the same to the height it stood in 1875, and if this is done, the land of complainant so injured, as aforesaid, which was originally good grass land, fit for pasture or meadow, will continue to be injured as aforesaid, "and that the damage to your orator's land which will result from increasing the height of the dam will amount to $500," and "great and irreparable damage will be done to your orator's said land."

The defendant put in an answer, in which he denied all the material allegations of the bill. He denied that complainant was entitled to any damages, and alleged that complainant had land in the neighborhood of the dam since 1853, and that during all that time it has been kept at a greater height than four and a half feet, and at the height of six and a half feet; that at the time complainant became the owner of the land described in the bill as his farm, the dam stood at the height last mentioned; that complainant has, ever since he so became owner, acquiesced in keeping the dam at that height; that complainant's grantors before him had, in like manner, acqui-

esced therein for nineteen years and more prior to 1872; that said dam was not increased in height in 1875, or at any time, and that complainant has, since 1875, assisted defendant in repairing said dam without objection to its height, and in 1883, with full knowledge of defendant's intentions in relation thereto, solicited the work of repairing the same after the "washout" of that year, mentioned in the bill.

It is also alleged that the dam was erected by Vincent in 1853, by virtue of an act of the General Assembly of the State of Illinois, as follows:

"An act to authorize Tristram Vincent to build and maintain a dam across the Des Plaines river, in Lake county.

"Sec. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That Tristram Vincent, of the town of Vernon, in Lake county, his heirs and assigns, be and is hereby authorized to build and maintain a mill-dam seven feet high, across the Des Plaines river, on the south half of section 23, in township 43, north, of range 11, east of the third principal meridian, in said county.

"This act shall take effect and be in force from and after its passage.

"Approved February 11, 1853."

After a long and patient hearing in the circuit court, where the most of the witnesses appeared and testified in person before the court, a decree was rendered dismissing the bill for want of equity. The complainant appealed to the Appellate Court, where the decree of the circuit court was affirmed. To reverse that decree the complainant has appealed to this court.

The mill-dam in question was erected at an early day,—as early as 1846,—and it has been maintained ever since. In 1853, the mill was purchased by one Vincent, who kept the dam in repair, and used the mill until July, 1863, when it passed into the hands of Boker, who operated it until 1867, when it passed into the hands of Wiley, who operated the

mill until 1871, and since that time the mill has been owned
and operated by appellee and his father. In 1875, the dam
washed out, and appellee rebuilt it to the height of six and a
half feet. The dam was maintained at this height until Feb-
ruary, 1883, when a part was carried out by high water. The
defendant was making preparations to rebuild when this suit
was commenced, in March, 1883.

The fact that a dam was erected as early as 1846, and has
been maintained from that time to the present, and the mill
operated on the present site, is not in dispute; but the com-
plainant insists, that prior to 1875 the dam was only four and
a half feet high, and in that year the defendant increased the
height two or two and a half feet, while, on the other hand,
the defendant claims, that as early as 1863 the dam was at
least six and a half feet high, and the height was not increased
in 1875. Much evidence was introduced, on the hearing, upon
this controverted point, by both parties, and after a careful
consideration of all the evidence we are not prepared to say
that there is such a preponderance in favor of the complainant
as to authorize us to say that the circuit and Appellate courts
misjudged the evidence upon this question. If, then, the con-
clusion reached by the circuit court, that the dam had not
been raised in 1875, as charged in the bill, was not contrary
to the weight of the evidence, it is clear that the complainant
had no standing in a court of equity. For a period of thirty
years the defendant and his grantors have operated the mill,
and exercised the uninterrupted adverse enjoyment of the priv-
ilege to overflow lands belonging to complainant and others,
lying in the river bottom, above where the dam was erected.
An uninterrupted adverse enjoyment for over twenty years is
a bar to a bill of this character. *Vail* v. *Mix*, 74 Ill. 128, is
an authority in point. Here, the complainant and his grantors
acquiesced in the erection of the dam and the use of the mill,
and the consequent overflowing of the lands, for over thirty
years. Under such circumstances, they have no standing in

a court of equity, to enjoin the rebuilding of a portion of the dam which was carried away.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*