EBEN H. FERNALD, and others, in equity vs. KNOX WOOLEN COMPANY, and others.

Knox.     Opinion June 26, 1889.

*Equity.     Injunction.     Great Ponds.     Outlet.     Mill-owners.     R. S., c. 92, § 1.*

The water of great natural ponds or lakes can not be lawfully drawn down below their natural low-water line, without legislative authority; nor under the mill act, R. S., c. 92, § 1.

A bill in equity may be maintained by the owner of land, bounded on a great pond, to restrain by injunction mill-owners on the outlet, from drawing off the water in such pond, below its natural low-water mark by excavating the channel, or deepening the outlet.

ON REPORT.

Bill in equity, heard on bill, answer and proofs.

The plaintiffs allege in their bill that they are owners of several parcels of land, having a water front of nearly twelve miles, and bounded on Megunticook and Long ponds, in Camden and Lincolnville; also an island in Megunticook pond containing fifteen acres.     They further allege, "that the respondents are owners and possessors of a dam at the outlet of said ponds, across Megunticook stream at a place known as Molineaux mills, and said respondents by means of said dam detain the waters of said ponds, forming a reservoir for the use of their several mills and factories in said stream; that hitherto said ponds have not been sufficient to supply said mills with a continuous flow of water during the summer and fall months; and three years ago or thereabouts, said respondents, in order to increase and continue the flow of water from said ponds by said stream to their several mills and factories, during said summer and fall months, excavated and depressed the channel at the outlet of said ponds and drew off and lowered the waters of said ponds below their natural low-water mark three feet.     That during the summer and fall months last past, said respondents excavated and depressed the channel at the outlet of said ponds about four feet, additional, and threaten and intend thereby, whenever the natural flow of

the waters of said ponds will not supply their respective mills and factories on said stream, a sufficient and continuous force of water power, to draw off and use the water of said ponds below their natural low-water mark, so far as said excavations and depressions of the channel at the mouth of said ponds will permit.

And your orators say that the withdrawal of the waters of said ponds below their natural level is a great damage to their several described tracts of land. That during the summer and fall months of 1884, 1885 and 1886, the respondents drew off the waters of said ponds below their natural low-water mark by means of the aforesaid excavations and depressions of the channel at the outlet of said ponds, a depth of three feet, and the waters of said ponds around the shores of same, thereby receded, from the natural low-water mark, where, by right they should be kept, an average of more than seven rods, and your orators were obliged, and did extend their respective line fences, at great expense, that distance, and the shores or bottom of said ponds thus exposed were boggy and full of quagmires and pits and dangerous to the safety of beasts traveling over them from pastures on their lands aforesaid, in going to said ponds for water to drink, and your orators were put to great trouble and expense in watching their cattle and procuring them drink. And your orators further say their respective lands are valuable as cottage lots, and by withdrawing the waters of said ponds as aforesaid by the respondents said lands have been greatly reduced in value in this respect.

Wherefore your orators pray that the said respondents may be compelled to make satisfaction to them for all damages to their respective rights by reason of the withdrawal, as aforesaid, of the waters of said ponds below their natural low-water mark. And that they may be restrained by the injunction of this honorable court from drawing off the waters of said ponds below their natural low-water mark, and that your orators may have such further and other relief in the premises as the nature of their case shall require, etc."

The defendants in their answer admit the ownership and possession of the plaintiffs' lands, and that they themselves own and

possess the dam at the outlet of said ponds. Further answering the defendants say :—

"That they are the owners and possessors of several large mills and factories, erected upon their own land, below said dam and upon said Megunticook stream, which stream is not navigable, and is the natural outlet of said ponds, which said mills and factories they have the right to maintain and operate, and that said dam was erected, and is maintained by them on their own land upon and across said stream, to raise water for working their said mills and factories.

That they have hitherto, to wit, in December, 1877, acquired and still possess, by purchase from the complainants and from all other owners of land flowed by said dam, the right to erect and maintain said dam as it now exists and as it existed on the day of the date of said bill, and to flow all the lands of the complainants, and of other riparian owners, which are or have been since said purchase flowed by said dam; and that by virtue of their deeds of purchase from the complainants and other riparian owners, they have acquired and possess the right, as against these complainants, to draw off, divert and use the waters of said ponds below the natural low-water mark, so far as the same may be necessary for propelling and operating their said mills and factories, and the machinery therein.

That for the purpose of propelling their said mills and factories, and the machinery therein, they have hitherto, and before the date of said bill, deepened the channel of said stream upon their own land, from the outlet of said ponds, down the stream, for a distance not exceeding twenty rods, and to a depth not exceeding four and one-half feet below its natural depth; that such deepening was effected by cutting a canal in the bed of said stream and was necessary in order to supply water for propelling said mills and factories, and the machinery therein, in times of drought, when the natural flow of said stream is insufficient for said purpose.

They deny that during the summer and fall of the years 1884 and 1885, or during any portion of said time, they drew off the waters of said ponds below their natural low-water mark by means of said canal, or by any means whatever.

That in the summer of 1886, during a time of severe drought, when the natural flow of said stream was insufficient for propelling their said mills and factories, and the machinery therein, they drew off and diverted the waters of said ponds somewhat below their natural low-water mark, by means of said canal, for the purpose of propelling their said mills and factories, and the machinery therein, and that such drawing off and diversion was necessary for the operating of said mills and factories; that such drawing off and diversion of the water was not to the extent set forth in said bill, but much less, and that the complainants did not suffer the damage set forth in their said bill, or any damage or injury thereby.

That they intend to draw down and divert the waters of said ponds, by means of said canal for the purpose of propelling their said mills and factories, and the machinery therein, in times of drought when the natural flow of said stream is insufficient therefor, and at no other time and for no other purpose, and then only so far as is necessary for said purpose, and that they have the right, as against the complainants, to draw off, divert, and use said waters.

They deny that the drawing off and diverting of the waters of said ponds, at the times and in the manner, and for the purpose, and to the extent proposed, and intended by them, as set forth in the last preceding clause of this answer, will cause any damage or injury to the complainants, or either of them.

That if the complainants have sustained, or shall hereafter sustain, any damage or injury, by reason of the drawing off, and diversion of said waters, by means of said canal, for the purpose aforesaid, they have a complete, adequate and exclusive remedy at law.

And the defendants further say that the complainants have not, in and by their said bill shown such an interest in the waters of said ponds, and in the lands under said ponds, or made such a case as entitles them, in a court of equity, to any relief from or against these defendants, as to the matters contained in said bill, or any of such matters; and they insist upon this and claim to have the same benefits therefrom as if they had demurred to said bill."

*J. H. Montgomery*, for plaintiffs.

These ponds and the lands under them, below low-water mark, belong to the state, and are under its control. *Brastow* v. *Rockport Ice Co.*, 77 Maine, 100, 103; *Potter* v. *Howe*, 141 Mass. 357; *Atty. Genl.* v. *Jamaica Pond Aqueduct*, 133 Mass. 361, 364. Remedies by indictment and injunction: High Inj. § 1555; *Potter* v. *Howe*, *supra*. When the waters recede, plaintiffs obliged to extend their fences, which are destroyed by the returning waters. The estimated withdrawal around the shore of one party will be fifteen to twenty rods. Right to excavate into the pond and withdraw its waters is not given by the mill act, either in express terms or by implication. That act is in derogation of common right, and not to be extended by construction beyond its just and fair meaning. *Jordan* v. *Woodward*, 40 Maine, 317, 322; *Bates* v. *Weymouth Iron Co.*, 8 Cush. 548, 555. The excavations made into the pond were made on public land, the bottom of the pond belonging to the state. The language of the statute confines the powers given to streams not navigable. It does not apply to streams where the tide ebbs and flows though not navigable. *Murdock* v. *Stickney*, 8 Cush. 113.

*W. H. Fogler* and *C. E. Littlefield*, for defendants.

Counsel argued: that the state owns the waters of a great pond as public property, held in trust for public uses; that the owner of lands adjoining a great pond is bounded by the natural low-water mark; that such littoral owner has no special title or interest in the waters of such pond; and no greater right to the use of such water than has every other person; that the use of such waters is free to every one who can gain lawful access to them; that any person may lawfully take such waters for domestic, agricultural or manufacturing purposes; that for any excessive or unreasonable use or taking of the waters of such pond a person is amenable only to the state and not to any individual of the state.

It follows, therefore, that the mere fact that the defendants have deepened the channel at the outlet of Megunticook pond and have drawn off, or intend to draw off, the waters of the pond below the natural low-water level, does not give the plaintiffs the right to maintain their bill. They have no private, legal or equi-

table interest in the subject matter of the bill. *Barrows* v. *McDermott*, 73 Maine, 441, and cases cited by the court, p. 449; *Brastow* v. *Rockport Ice Co.*, 77 Maine, 100–104; *West Roxbury* v. *Stoddard*, 7 Allen, 158; *Fay* v. *Salem &c. Aq. Co.*, 111 Mass. 27; *Hittinger* v. *Eames*, 121 Id. 539; *Gage* v. *Steinkrauss*, 131 Id. 222; *Watuppa Reservoir Co.* v. *Fall River*, 147 Mass. 548.

The defendants are the riparian owners of the stream which flows from Megunticook pond. The usufruct of the water in a water-course is inherent in the ownership of the land through which the water flows. *Johnson* v. *Jordan*, 2 Met. 234, 239.

The defendants are also the owners of mills and manufactories upon the stream from its source to its mouth at the sea.

As mill-owners, they have the right, by the law of this state, to use the water for the operation of their mills, and to that end they may, by means of dams, or canals, or excavations upon their own land, detain or accelerate, increase or divert the flow of the water of the stream to any reasonable extent. They are liable to pay damages to those only whose property is flowed or otherwise injured by such acts.

This right of the mill-owner has always been regarded by the courts of vital importance to the public. In *Lancey* v. *Clifford*, 54 Maine, 487–491, it is said to be "the handmaid of civilization."

In the case at bar, upon the exercise of this right by the defendants depends the prosperity of one of the prosperous towns of the state. Whatever improvements they may have made by increasing the capacity of the stream inures to the public good, as well as to their own.

Plaintiffs complain that defendants have excavated and deepened the channel of the stream upon their own lands.

The stream is not navigable, nor even floatable. The defendants owned not only the land through which the stream runs, but the bed of the stream as well.

"It is settled in this state that he (the riparian owner) owns the bed of the river to the middle of the stream. He owns all the rocks and natural barriers in it." *Pearson* v. *Rolfe*, 76 Maine, 380, 385–6.

The act of excavating in the bed of the stream is in and of

itself lawful. Not even a proprietor upon the same stream, above or below, can maintain an action for the diversion, the raising or detention of the water by a neighbor upon the stream, which, being reasonable in mode and degree, is not the cause of actual, perceptible damage. Gould on Waters, § 214, and cases there cited. *Elliot* v. *Fitchburg R. R.*, 10 Cush. 191.

The complainants are proprietors of lands on the shore of Megunticook pond. They have no greater or other rights in the water of the pond than those of the public generally. They have no special property or rights in the water, and they can, therefore, have no action for its mere diversion.

They have no ground of action, in any form, in law or in equity against the defendants, unless the acts of the defendants complained of have caused or may cause, actual, perceptible damage to their property. *Fay* v. *Salem &c. Aq. Co.*, *supra.*

The damages complained of are: That the defendants are obliged to extend their fences further into the pond; that upon the land exposed by the withdrawal of the water are quagmires and pits dangerous to the safety of their beasts; that the value of the plaintiffs' lands for "cottage lots" is diminished. The testimony is entirely silent upon the second and third claims.

The water line of the shores of a natural pond, under ordinary conditions, fluctuates from the extreme high-water line to extreme low-water line. Between these lines permanent fences can not be maintained. This is an inconvenience attending littoral owners. In the case at bar, the plaintiffs have sold to the defendants the right to flow above high-water mark, thereby increasing the width of the land alternately covered and uncovered by water.

Whether the complainants will be obliged to maintain additional fences will depend upon the use to which their lands may be put, and the point on the shore where their fences will reach the water. In any event, the waters will be drawn off below low-water line only a small portion of exceptionally dry years.

Counsel further argued: that our statutes constituting the mill acts, apply to ponds, or great ponds; that they authorize the diversion of the water therefrom below low-water mark, as there

can be no diversion as to riparian proprietors on the pond, save by drawing it below its natural level at low-water; that this diversion may as well be within the spirit of this statute, by an excavation within, as without the outlet, of the pond, as it is the diversion, and not the precise manner of the diversion, that produces the results desired, and causes the injury, if any; that the facts in this case, therefore, bring us within the protection of these statutes, which furnish to the complainants, a plain, complete and adequate remedy at law, and this bill can not be maintained. *Goodwin* v. *Gibbs*, 70 Maine, 243 ; *Nelson* v. *Butterfield*, 21 Maine, 220 ; *Cummings* v. *Barrett*, 10 Cush. 186, 188.

Case differs materially from *Potter* v. *Howe*, 141 Mass. 357, 359, where the court say, "this case does not present any question as to the right of the public (meaning the public right to appropriate, under the mill act, by individuals,) so to use the water between its natural levels, but only the right artificially to detain it above high-water mark and to draw it away below low-water mark." It is not perceived how that case can have any force as an authority at bar, under a different statute and a state of facts.

If the mill act does not apply, they can recover full compensation in an action at law. *Blanchard* v. *Baker*, 8 Maine, 253 ; *Clapp* v. *Manter*, 78 Maine, 358, 361 ; *Elliot* v. *Fitchburg R. R.*, 10 Cush. 191, 196 ; *Brayton* v. *Fall River*, 113 Mass. 218 ; Gould on Waters, §§ 401, 424.

And past, present and prospective damages may be recovered in one suit. *Duncan* v. *Sylvester*, 24 Maine, 482, 489 ; Gould on Waters, § 416, and cases cited.

Having such remedy at law the plaintiffs can not maintain their action in equity. *Bird* v. *Hall*, 73 Maine, 73 ; *Denison Paper Mfg. Co.* v. *Robinson Mfg. Co.*, 74 Maine, 116 ; *Gamage* v. *Harris*, 79 Maine, 531 ; *Davis* v. *Weymouth*, 80 Maine, 307.

WALTON, J. This is a bill in equity the prayer of which is that the defendants may be restrained by injunction from drawing off the waters of certain ponds named in the bill below their natural low-water mark.

It appears that the plaintiffs own land bounded on the ponds

and that the defendants own mills on the outlet, and the complaint is that by excavating the channel, the defendants are able in times of drought to draw down the water in the ponds below their natural low-water line, and that this is a damage to the plaintiffs' land.

We think the injunction prayed for must be granted. We do not think the owners of mills on a stream, flowing from a great natural pond or lake, have a right to lower the outlet and draw down the water in the pond or lake below its natural low-water line.

Such a right is inconsistent with the existence of the pond as a pond. If exercised to its fullest extent it would destroy the pond. All the water might be drawn out and its bed left dry, a mere stream of running water only remaining. And if exercised, to any extent, the necessary effect must be to widen the shores and deprive the adjoining land owners of their natural water frontage; for it is the settled law of this state that lands, bounded on a great pond or lake, extend only to the natural low-water line, and that all beyond is owned by the state. And this natural water frontage may be as valuable to the land owner as the right to draw water is to the mill-owner. But whether of equal value or not, it is of equal validity in law, and entitled to equal pro-' tection.

This precise question was recently considered in Massachusetts, and the court held that the water of a great pond could not be lawfully drawn down below its natural low-water line; that such a use of the water would be unreasonable; that great ponds belong to the public; that to draw down the water below its natural level is inconsistent with the common right to the use of the pond as a pond; that for such an abstraction of the water an information or an indictment would undoubtedly lie for the public wrong; and that an adjoining land owner thereby deprived of his natural water frontage could obtain redress by injunction. *Potter* v. *Howe*, 141 Mass. 357.

As great ponds and lakes are public property, the state may undoubtedly control and regulate their use as it thinks proper. But in the absence of legislative authority, no individual or

corporation can lawfully draw down the water of a great natural pond or lake below its natural low-water line.

It is urged in defense, that our mill act secures to mill-owners the right to cut canals and divert water, and that the lowering of the outlet of a pond and the drawing down of the water may be justified under this act. We think not. The language of the statute is that a man may cut a canal on his own land, "and thereby divert from its natural channel the water of any stream," etc. R. S., c. 92, § 1. To divert is to turn aside. The mere abstraction of water can hardly be called a diversion of it. The lowering of a natural channel can hardly be called the diversion of water "from its natural channel." Nor can the water of a pond properly be called the water of a stream. The terms pond and stream do not mean the same thing. Nor is there any thing in the history of the act, or the inconvenience to be remedied, which leads us to believe that the legislature could have intended that the word stream should include a pond. We think the statute does not apply.

The evidence fails to satisfy us that at the time of the commencement of this suit the defendants had drawn down the waters of the ponds referred to in the plaintiffs' bill below their natural low-water level more than once, and then only for a short time during the dry season of 1886. The damages, therefore, can be nominal only. But as the defendants admit that they have lowered the outlet of the ponds some four feet or more, and avow their intention to draw down the water below its natural low-water line, whenever in times of drought the water is needed for their mills, we think the plaintiffs are entitled to the injunction prayed for.

*Bill sustained, injunction as prayed for,
with nominal damages and costs.*

PETERS, C. J., DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.