## City of Peoria v. John G. Ballance.

61   369
70   546

1. RENT—*Not Recoverable for an Occupation of Submerged Lands.*— An occupancy of submerged lands in a navigable river by a city for an ice break, bridge rest, and a draw span for navigation purposes, and in no way interfering with the use of the lands not submerged, is not such an occupancy in law as will entitle the riparian owner to treat the city as a tenant and maintain an action for rent.

2. RIPARIAN OWNERS—*On Navigable Streams.*—The owner of land fronting upon a navigable stream owns to the center of the stream, subject to the use of the public for navigation and travel.

**Debt,** for rent. Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1895. Reversed and remanded. Opinion filed December 10, 1895.

## Statement of the Case.

On the 20th of July, 1866, one Charles Ballance, from whom appellee derived title, leased to the Peoria Bridge Association, a corporation which had, by an act of the legislature, been authorized to construct a toll bridge across the Illinois river, at Peoria, for the term of twenty-five years, the southwesterly half of lot number four and so much of lot number five as lies between what is known as the French line and the Illinois river, all in block number fifty, of Bigelow and Underhill's addition to Peoria.

It was provided by the lease that, first, the lessee should pay as rental, $200 per annum for the first five years, and thereafter, six per cent on the value of the ground, which value was to be fixed on the 20th of July, 1871, 1876, 1881 and 1886, for the five years succeeding each of said dates respectively; second, that the lessee should pay all taxes until 1891, for which year the lessor should pay the taxes on the ground and the lessee the taxes on the improvements; third, that at the expiration of the term in 1891, the lessee would deliver possession of the premises to the lessor, his heirs or assigns, in as good order as when the lease was executed; fourth, that at the expiration of the term, all improvements upon the premises should be valued by three persons to be selected, and the lessor should have the privilege of taking them at such valuation, but that if he should decline so to do, then the lessee or its successor should have the right to remove them and should be allowed thirty days after the expiration of the lease in which to do so; fifth, that if default should be made in the payment of rent, or in any of the covenants in the lease, the lessor would have a right to declare a forfeiture and take possession of the premises, and the lessee, if it retained possession after ten days from the termination of the lease should be guilty of forcible detainer and subject to immediate eviction.

On the 3d of November, 1886, the Peoria Bridge Association sold its bridge and all appurtenances to the city of Peoria, and all right and interest in the lease described was transferred by the terms of the sale.

It was agreed that the city should pay all rent provided for by the lease to the lessor and should perform all the covenants contained therein to be performed by the lessee.

The city converted the property into a free bridge for public use and has continued to operate it as such ever since. From the date of the purchase until the expiration of the term it paid an annual rental of $250, that rate having been fixed under the provision for valuation for the five years commencing July 20, 1886, but has declined and refused to pay rent since.

This suit was brought for the purpose of recovering rent accruing since the expiration of the lease. A jury was waived and a trial by the court resulted in a judgment in favor of the plaintiff for $750 debt and $78.95 damages.

W. T. Irwin, city attorney, for appellant; Geo. Hunt, of counsel.

McCulloch & McCulloch and J. M. Rice, attorneys for appellee.

Mr. Justice Harker delivered the opinion of the Court.

This is an action of debt to recover rent reserved in a lease executed by appellee's ancestor to the half of lot four and a portion of lot five, in block fifty, of Bigelow and Underhill's addition to Peoria, fronting upon the Illinois river. The rent is claimed for time accruing since the expiration of the lease. There is no evidence showing what was the rental value of the property during the time; but it is claimed that appellee is entitled to recover at the rate fixed for the last five years of the lease.

The position of appellee is that, being the owner of the lots in question up to the thread of the stream, he can treat appellant either as a trespasser or a tenant holding over, and having elected to treat it as a tenant, it must pay rent at the rate fixed by the last valuation, until it shall have taken the proper steps to terminate the tenancy.

The bridge does not cross any portion of the premises in

question, but there is an ice break and a bridge rest to support a draw span of the bridge, when turned for the purposes of navigation, erected in the river below low water mark, in front of the lots.

The following diagram shows the situation:

The evidence shows that the ice rest and the bridge rest for the draw span were erected before the lease was executed. No buildings were erected upon the leased premises

during the term of the lease, and the occupancy, since the expiration of the term, has been limited to the ice break and bridge rest, and the draw span when swung for purposes of navigation. The use has been limited entirely to the submerged district, because the ice break and bridge rest are from thirty to forty feet from the shore line at low water.

That the owner of land fronting upon a navigable stream owns to the center of the stream, subject to the use of the public for navigation and travel, is a principle so well settled as to admit of no question. Middleton v. Pritchard, 3 Scam. 510; Beckman v. Kreamer, 43 Ill. 447; Ensminger v. The People, 47 Ill. 384; Chicago v. Laflin, 49 Ill. 172; Braxton v. Bressler, 488; Piper v. Connelly, 108 Ill. 646.

It is contended by appellee that the ice break, bridge rest and draw span, when swung open, interfere with his riparian rights and constitutes an occupancy of his premises. Upon the part of appellant it is contended that such occupancy comes within the right of the State to the use of the submerged district for navigation and travel; that, as the State granted the Peoria Bridge Association the right to construct and maintain the bridge, it granted the right to so construct it as not to interfere with navigation, and that as the draw span, bridge rest and ice break were necessary to such construction, the rights of appellee, as a riparian owner, are subordinate to the right to maintain those structures in the submerged district fronting his lots.

As we view it, a holding upon that question is not necessary to a decision of this case.

Appellee seeks a recovery upon the lease. He claims that the occupancy is sufficient to justify him in treating appellant as a tenant holding over under the terms of the expired lease. This necessarily involves a construction of that instrument, and to hold with appellee would have the effect to require, at the election of appellee, the bridge association, or its assignee, to give up its draw and remove the bridge rest from the premises at the end of the term. This we do not think was intended.

A fair construction, we think, limits the lease to so much

of lot five as lies between the French line and low water line and the southwesterly half of lot four to the low water line. We do not think it was contemplated that the lease should cover the submerged district already occupied by the ice break and bridge rest. No mention is made of either of those structures, while in the fourth clause it is expressly provided that at the expiration of the term all buildings and improvements erected upon the premises shall be valued by three persons, and that the lessor shall have the privilege of taking them at the valuation, but that if he shall decline to do so then the lessee shall have the right to remove them in thirty days.

We can not think that if it was contemplated that the ice break and rest should be included within that provision the instrument would have been silent in regard to those structures.

If we are right in this construction there is no room for the contention that appellant is holding over under the lease.

It disclaims any right to any portion of lots four and five except that occupied by the ice break and bridge rest, and leaves appellee free to possess and control them. It was not incumbent on the city to notify him that it would cease to occupy on the termination of the lease.

If appellant's rights, as a riparian owner, are interfered with by the maintenance of the ice break and bridge rest, and the use of the draw, he has his remedy, but not against appellant as a tenant under the lease. Reversed and remanded.