**INDIAN REFINING CO. v. AMBRAW RIVER DRAINAGE DIST. et al.**

No. 320–D.

District Court, E. D. Illinois.

Dec. 7, 1932.

Oscar John Dorwin, of Lawrenceville, Ill., and Walter T. Gunn, of Danville, Ill., for plaintiff.

G. W. Lackey, of Lawrenceville, Ill., for defendants.

LINDLEY, District Judge.

This is an action brought by plaintiff, an oil refining company, against a drainage district organized under the statute of the state of Illinois and certain executive officers, to restrain them from altering the course and lowering the level of the Embarrass river in Lawrence county, Ill.

Plaintiff owns certain property known as pump property directly abutting upon the west side of the river, and in addition thereto, just to the south of the pump property, but a short way from the river, certain refinery property of great value. Running from the refinery eastward to the river are rights of way over land abutting on the river and between it and the refinery owned by plaintiff, through which it sends its waste water through drains into the present channel. Plaintiff uses an enormous amount of water in its operation, and approximately all of it is taken from the river at the pumphouse, and, after passing through the refinery, is returned to the drains and thence to the river as waste water.

Defendants propose to build a dredge ditch from a point shortly south of plaintiff's pumphouse, straightening the course of the river and diverting it to the left of the pres-

ent channel. Plaintiff claims that the resulting lowering of the level of the water at its pumphouse will deprive it of its natural riparian rights and also such rights as it may have gained by prescription and that the effect upon the old channel will seriously damage it in its operations and seeks to enjoin the prosecution of the proposed construction work. The drainage district, a municipal corporation, has at no time taken cognizance of plaintiff's asserted rights.

The facts and the reasons for my decision fully appear in special findings of fact and conclusions of law entered contemporaneously herewith. In view of the same, it may be that no further discussion is necessary. However, a brief statement of my position may be of aid to counsel and to the Court of Appeals, if there should be an appeal.

Included within riparian rights of an abutting owner is the privilege to make use of the waters of the stream for "any necessary and proper purpose incident to the land itself and essential to its enjoyment" which does not materially interfere with the rights of other similar owners (27 R. C. L. 1070–1079–1875); to have the stream flow as it is wont by nature, without material diminution or alteration, to flow "in the usual quantity at its natural place and height," and to flow from his land in its accustomed place "and at the usual level" (Gould, Waters, 374). When others cause the stream to run from his land "in an unusual manner, and actual injury ensues," the owner has a right of action. Tillotson v. Smith, 32 N. H. 90, 64 Am. Dec. 355. See, also, Sturr v. Beck, 133 U. S. 541, 10 S. Ct. 350, 33 L. Ed. 761; Atchison v. Peterson, 20 Wall. 507, 22 L. Ed. 414; Pinkstaff v. Steffy, 216 Ill. 406, 75 N. E. 163; Deterding v. Central Illinois Pub. Service Co., 313 Ill. 562, 145 N. E. 185. In Druley v. Adam, 102 Ill. 177, the court said: "The law has been long settled, in this State, that there can be no property merely in the water of a running stream. The owner of land over which a stream of water flows, has, as incident to his ownership of the land, a property right in the flow of the water at that place for all the beneficial uses that may result from it, whether for motive power in propelling machinery or in imparting fertility to the adjacent soil, etc.,—in other words, he has a usufruct in the water while it passes; but all other riparian proprietors have precisely the same rights in regard to it, and, apart from the right of consumption for supplying natural wants, neither can, to the injury of the other, abstract the water, or divert or arrest its flow."

So far as the pumphouse land which abuts upon the west bank of the river is concerned, plaintiff is clearly a riparian owner, and as such owns the land to the center of the thread of the stream. The water and soil under it to such extent are those of the riparian owner (Middleton v. Pritchard, 3 Scam. [Ill.] 510, 38 Am. Dec. 112), even though the stream be in fact navigable. The effect of navigability is merely to give to the sovereign or the public an easement to pass over or be transported upon the water. Washington Ice Co. v. Shortall, 101 Ill. 46; 40 Am. Rep. 196; Middleton v. Pritchard, 3 Scam. (Ill.) 510, 38 Am. Dec. 112; Chicago v. Laflin, 49 Ill. 172; People v. Economy Power Co., 241 Ill. 290, 89 N. E. 760; Albany R. Bridge Co. v. People ex rel. Matthews, 197 Ill. 199, 64 N. E. 350.

Lessees and owners of rights of way or easements and grantees of riparian rights are also riparian owners, and, to the extent of their title, endowed with all the rights thereof. Barney v. Keokuk, 94 U. S. 324, 24 L. Ed. 224; Reed v. Spicer, 27 Cal. 57; Bristol Hydraulic Co. v. Boyer, 67 Ind. 236; Gould v. Stafford, 91 Cal. 146, 27 P. 543; 27 R. C. L. 1077. Furthermore, riparian rights may be acquired by prescription; that is, by use adverse to others for over twenty years. Ballard v. Struckman, 123 Ill. 636, 14 N. E. 682; 27 R. C. L. 1085; 1 Whitehead on Illinois Real Property, 811.

Consequently, as to the pumphouse lands owned by it, plaintiff is entitled to all the rights of a riparian owner. In addition, it has under the doctrine of prescription, in view of its more than twenty years' use, a similar right to use the water and have it kept at the normal level. Then, too, it has, under its grants of rights of way to the river and use of the same for carrying waste water for many years, the rights of a riparian owner as to its drain lines and retaining walls. These rights include all privileges embraced within the general doctrine governing riparian owners as hereinbefore set forth.

The findings of fact indicate to what extent those rights will be damaged by the proposed alteration in the river. The pumps will be greatly lessened in efficiency and their practical use endangered. To replace the water supply enormous expense will be incurred. To rebuild the pumphouse and the pumps would necessitate a very substantial monetary outlay. To divert the channel

would clog up the outlets for the enormous quantities of hot waste water emptied by the drains, and the peculiar physical conditions would bring about a reversal of flow so that such hot water and the sanitary sewage from the city's drains would be caused to flow toward the pumps and seriously handicap and perhaps effectively prevent the present efficient method of furnishing water to the refinery of plaintiff. Other results are indicated by the formal findings. All of them produce substantial damage to and the taking of substantial property rights of plaintiff as a riparian owner.

Section 13 of article 2 of the Constitution of Illinois is as follows: "Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law."

█ The proceedings for making the proposed changes did not take into account plaintiff's rights. It had no day in court, and may now, therefore, have the proposed action enjoined because of a failure to recognize its rights under the constitutional provision quoted.

In the case of People v. City of St. Louis, 5 Gilman, 351, 48 Am. Dec. 339, the Illinois Supreme Court held that the state might change the current of the Mississippi river, or even stop up some of its confessedly navigable channels, taking care to leave a free passage to those who have the right to navigate it, and if, in doing so, private property should be damaged, compensation would have to be first made to the owner. This case is quoted approvingly in City of Chicago v. Laflin, 49 Ill. 172, in which the court referred to the fact that appellees were the owners of wharves on the Chicago river which they had used for over a quarter of a century, and, on page 177 of the opinion the court said:

"And even if the State has delegated its rights to the city to change the channel of this stream, and we have been referred to no law which grants the power, it could exercise no higher or greater power than the State; and we have seen, that if the State exercises such power and it injures the rights of individuals, compensation must first be made.

"It would be monstrous that the city should at pleasure make changes in this stream so as to render buildings on the wharfs an obstruction, and then require their removal without compensation. Such power

would be more vast and absolute than can be exercised by the State itself. The city government is created, and has its powers delegated for the better protection of individual rights, and not that they may be disregarded or destroyed."

The last paragraph taken from the opinion in the Laflin Case, 49 Ill. 172, is quoted approvingly in People v. Economy Light & Power Co., 241 Ill. 290, on page 327, 89 N. E. 760.

Both cases had to do with navigable streams.

█ Nor can the action of defendants be justified under the police power, which is the power to regulate, in order to promote the order, safety, health, morals, and general welfare of society. In Sanitary District v. C. & A. R. Co., 267 Ill. 252, 108 N. E. 312, 314, the court said:

"'It is a regulation, and not a taking; an exercise of police power, and not of eminent domain. But the moment the Legislature passes beyond mere regulation, and attempts to deprive the individual of his property, or of some substantial interest therein, under the pretense of regulation, then the act becomes one of eminent domain.' 1 Lewis on Eminent Domain (3d Ed.) § 6. Police power and eminent domain are distinct powers of the government. 'The difference lies neither in the form nor in the purpose of taking, but in the relation which the property affected bears to the danger or evil which is to be provided against. * * * It may be said that the state takes property by eminent domain because it is useful to the public, and under the police power because it is harmful' (Freund on Police Power, § 511), or, as Justice Bradley has put it, because 'the property itself is the cause of the public detriment' (Davidson v. New Orleans, 96 U. S. 97, 24 L. Ed. 616)."

Police power being one lodged in the state, it may be exercised only by the latter's authority, through legislation. But no statute cited warrants the taking of plaintiff's property under the guise of regulating the flow of the Embarrass river. In 12 Corpus Juris, 928, it is stated: "However broad the scope of the police power, it is always subject to the rule that the legislature may not exercise any power that is expressly or impliedly forbidden to it by the state constitution."

In 6 R. L. C. 196 and 197, we are told that: "A law is considered as being a deprivation of property within the meaning of this constitutional guaranty if it deprives an own-

er of one of its essential attributes, or destroys its value, or restricts or interrupts its common, necessary or profitable use, or hampers the owner in the application of it to the purposes of trade, or imposes conditions upon the right to hold or use it, and thereby seriously impairs its value. These general principles apply not only to statutes enacted by the legislature but to the action of executive officers generally."

See, also, City of Chicago v. O'Brien, 111 Ill. 532, 53 Am. Rep. 640; New Orleans Gas Co. v. Louisiana Light & Heat Producing & Mfg. Co., 115 U. S. 650, 6 S. Ct. 252, 29 L. Ed. 516; Hannibal Ry. Co. v. Husen, 95 U. S. 465, 24 L. Ed. 527; Lake Shore Ry. Co. v. Smith, 173 U. S. 684, 19 S. Ct. 565, 43 L. Ed. 858.

In Bradbury v. Vandalia Levee & Drainage District, 236 Ill. 36, 86 N. E. 163, 166, 19 L. R. A. (N. S.) 991, 15 Ann. Cas. 904, the district was organized under the same act as that under which the defendant district was created. The court there said: "It is not contended that any other than sanitary purposes come within the undefined limits of the police power, and districts formed under the act are not necessarily organized as a police regulation to drain lands which would be a menace to public health or a breeder of malaria and disease. So far as appears, this district, with its scheme for a levee, was organized for the purpose of improving the lands within the district for agricultural purposes, which is not an exercise of the police power, and it was organized upon the petition of a majority of the owners of lands in the belief that they would be benefited by the organization."

The language of the court in Beidler v. Sanitary District, 211 Ill. 628, 629, 71 N. E. 1118, 1121, 67 L. R. A. 820, is pertinent. There the court said: "There was nothing in the condition or character of the property of the plaintiffs which rendered it either necessary or desirable that it should be taken or damaged in the exercise of the police power. It is evident that lowering the level of the water obstructed ingress to and egress from the lots in question, and, following the reasoning of this court in City of Chicago v. Jackson, 196 Ill. 496, 63 N. E. 1013, 1135, we hold that such obstruction is a damage to private property for public use, within the meaning of section 13 of article 2 of the Constitution of this state, for which compensation may be recovered from the sanitary district under and by virtue of section 19 of the act authorizing the creation of the district."

The lack of power of a municipal corporation in the premises is aptly stated by the Supreme Court of Illinois in Elser v. Village of Gross Point, 223 Ill. 230, 79 N. E. 27, 31, 114 Am. St. Rep. 326, where the court said: "A municipal corporation has no greater right than a natural person to divert surface waters in large quantities by an artificial channel upon the land of another, except it may do this in the exercise of eminent domain, upon making just compensation as required by the Constitution. Jones on Easements, § 775; City of Aurora v. Love, 93 Ill. 521; City of Elgin v. Kimball, 90 Ill. 356; Nevins v. City of Peoria, 41 Ill. 502, 89 Am. Dec. 392; Stack v. City of East St. Louis, 85 Ill. 377, 28 Am. Rep. 619; Young v. Highway Com'rs, 134 Ill. 569, 25 N. E. 689. Nor can this municipality proceed with this proposed improvement and relegate appellant to his action at law for the damages sustained. While equity will not take jurisdiction, at the suit of one whose property, or some part of it, is not actually taken, to restrain the making of an improvement or building a railroad, still where, as here, the threatened act involves an actual taking, the expropriation will be enjoined until the damages are ascertained and paid in the manner provided by the law."

Defendant contends, however, that the damage is purely consequential, and that therefore plaintiff, under the doctrine expressed in Bay Bottoms District v. Cache River District, 295 Ill. 301, 129 N. E. 152, has no right to enjoin the defendants. Just what is a consequential damage as distinguished from a taking and damage to private property protected by the Constitution of Illinois is not clear. But it is evident at all events that the damage complained of here is not consequential in character. It is, as we have said, a deprivation of valuable property rights. That such is not consequential, but within the private property rights which will be protected by a decree in equity, is evident from the cases heretofore cited and many others. Thus in Hyatt v. Albro, 121 Mich. 638, 80 N. W. 641, the court said:

"Complainants are the owners of a flour and grist mill in the village of Linden, Genesee county. A dam has been maintained across the Shiawassee river by complainants and their grantors for upwards of 30 years, and the water power thus provided has been the only power used in or about this mill. The bill alleges that above the dam in Shiawassee river are two lakes, known respectively as 'Tupper Lake' and 'Mud Lake,' the two

being connected by a river known as the 'Middle River,' and the upper lake being fed by Shiawassee river, which has its origin at a point further up. The two lakes are, therefore, really enlargements of Shiawassee river. It is alleged that the defendants are about to deepen the natural channel of the Shiawassee river about two feet, and it is alleged that the purpose of this is to lower the level of the two lakes referred to for the purpose of reclaiming the lands which are overflowed by these lakes a portion of the year at least. It is further alleged that these lakes furnish a natural reservoir, which furnishes complainants' power, and that, if the water is lowered in the lakes, the effect will be to leave complainants without power for a large portion of the year, and, furthermore, that the deepening of the channel will carry down the water in greater volume during times of freshet, endangering complainants' dam. * * *

"The complainants have the right to have the water flow naturally without being accelerated or impeded, except to the extent that the concurrent rights of the upper riparian proprietors may affect such results. In so far as the proper use of the stream above results in inconvenience, or impedes the use of the stream by complainants, it is damnum absque injuria. Has the upper riparian owner the right to reclaim a portion of this lake by so accelerating the flow of the stream as to lower the water in the lake, thereby narrowing the area so as to reclaim overflowed lands? This accumulation of water from the overflow of the banks of the lake fed by the Shiawassee river above cannot be called surface water. West v. Taylor, 16 Or. 165, 13 P. 665; Schaefer v. Marthaler, 34 Minn. 487, 26 N. W. 726 [57 Am. Rep. 73]; Macomber v. Godfrey, 108 Mass. 219 [11 Am. Rep. 349]; Gould, Waters, § 264; Stock v. Jefferson Tp., 114 Mich. 357, 72 N. W. 132 [38 L. R. A. 355]. The right to drain surface water is clear. Gould, Waters, § 265. But the right to drain any portion of the water of these lakes above, which constitute the source of supply to the complainants' water power, would unquestionably be a wrong against complainants if the water was diverted from the stream. Is it any the less an interference with the complainants' property rights if the water be precipitated in an artificial manner by means of a deepened channel through the stream itself? We think not. On the contrary, this increasing of the flow, it is alleged with much force, would work an additional injury by imperiling complainants' dam. The circuit judge was of the opinion that the flow of water would not be diminished by the deepening of the river. We think it clear, however, that by the deepening of the channel the river will be carried off more rapidly than it now is. Indeed, if it is not expected that this will be the result of the improvement, we are at a loss to understand why it was undertaken.

"The decree dismissing the bill of complaint is reversed, and a decree will be entered enjoining the proposed deepening of the river."

In Fernald v. Knox Woolen Co., 19 A. 93, 82 Me. 48, 7 L. R. A. 459, the court said: "It appears that the plaintiffs own land bounded on the ponds, and that the defendants own mills on the outlet; and the complaint is that by excavating the channel the defendants are able, in times of drought, to draw down the water in the ponds below their natural low-water line, and that this is a damage to the plaintiffs' land.

"We think the injunction prayed for must be granted. We do not think the owners of mills on a stream * * * have a right to lower the outlet, and draw down the water * * * below its natural low-water line."

Other cases similar in fact where the court refused to treat the damage as consequential and directed an injunction are: Kray v. Muggli, 84 Minn. 90, 86 N. W. 882, 54 L. R. A. 473, 87 Am. St. Rep. 332; Castle v. Madison, 113 Wis. 346, 351, 89 N. W. 156; Smith v. Youmans, 96 Wis. 103, 70 N. W. 1115, 37 L. R. A. 285, 65 Am. St. Rep. 30; Priewe v. Wisconsin State Land Co., 93 Wis. 534, 67 N. W. 918, 33 L. R. A. 645; Webster v. Harris, 111 Tenn. 668, 69 S. W. 782, 59 L. R. A. 324; Tillotson v. Smith, 32 N. H. 90, 64 Am. Dec. 355; Hammond v. Antwerp L. & P. Co., 132 Misc. 786, 230 N. Y. S. 621; Stevens v. Kelley, 78 Me. 445, 6 A. 868, 57 Am. Rep. 813; Potter v. Howe, 141 Mass. 357, 6 N. E. 233; Fernald v. Knox W. Co., 82 Me. 48, 19 A. 93, 7 L. R. A. 459; Withers v. Purchase, 60 L. T. N. S. (Eng.) 819. See, also, High on Injunctions 815–A.

Defendants in a supplemental answer propose so to modify the proposed change of the stream as to include a dam which will maintain, as they claim, the water level at the pumphouse of plaintiff. This change in plans does not attempt to obviate other elements of damage to plaintiff hereinbefore noted, and from the evidence creates no assurance that it will achieve permanently the desired effect.

The proposed dam is largely of timber, is subject to the constant effect of the flowing water, decay, and decomposition. The statutes of Illinois afford no means for raising funds for rebuilding of same. Should it wash away, rot, or prove ineffective, plaintiff's situation would be without remedy.

I conclude, therefore, that plaintiff is entitled to an injunction as prayed. Proper decree may be submitted.