Lasell College & another[1] *vs.* Stephen M. Leonard & another.[2]

No. 91-P-64.

Suffolk. February 21, 1992. - April 6, 1992.

Present: Perretta, Fine, & Gillerman, JJ.

*Real Property*, Registered land: easement. *Easement.*

Language in certificates of title to registered land, giving the holders an
   easement for use of the unbuilt portion of a certain street, was not sub-
   ject to collateral attack by the owners of unregistered land abutting the
   street, or to those owners' claims to the disputed portion of the street,
   free of any easement, by virtue of open, notorious, and adverse use.
   [386-388]
No considerations of public policy precluded a landowner from registering
   an easement appurtenant to his land, even though the nonregistered
   land of an abutting owner would be burdened thereby. [388]
Where easements for the use of the unbuilt portion of a certain street were
   clearly expressed in the certificates of title to the benefited land, the
   owners of unregistered land abutting the street were not entitled to
   show by extrinsic evidence that no easements were created. [388-389]
Nonuse of registered easements in the unbuilt portion of a certain street,
   together with acquiescence in the incompatible use of the burdened
   property by others, was insufficient to establish that the easements had
   been extinguished by abandonment; however, the erection, by the owner
   of one of the benefited parcels, of a fence separating his property from
   a portion of the property subject to the easement established, in the
   circumstances, his intention never again to make use of the easement,
   warranting a conclusion that the easement was abandoned. [389-391]

Civil action commenced in the Land Court Department
on December 5, 1989.

The case was heard by *Robert V. Cauchon*, J.

*Peter A. Biagetti (Michael F. Connolly & Michael R.
Balfe* with him) for the defendants.

[1]Michael F. Iodice as trustee of MJ Realty Trust II.
[2]Deborah P. Waber.

*Eric W. Wodlinger* (*Osler L. Peterson* with him) for the plaintiffs.

FINE, J. This appeal arises out of a dispute among three property owners in Newton about their respective rights to use an unbuilt portion of Seminary Avenue which leads to Grove Street. Based upon decrees of the Land Court in registration proceedings in 1930 and 1931 and certificates of title issued in accordance with those decrees, a judge of the Land Court ruled, among other things, that all the parties to the present action "hold the fee to the middle line of the Way as it abuts their [respective] properties and that each holds an appurtenant right to pass and repass, by foot or by vehicle, over and along the entire distance of the Way, and to park along such Way, so long as these acts do not obstruct or interfere with the rights which other persons similarly situated may hold therein." The defendants, Stephen M. Leonard and Deborah P. Waber, contend on appeal that, in light of the relevant history of conveyances of the respective parcels and of the use of the disputed portion of Seminary Avenue, which has never been more than a "paper street," the registration proceedings relied upon by the judge were not dispositive of the right to use Seminary Avenue. Alternatively, they contend that any rights acquired by registration were abandoned. We think the judge's decision was correct except with respect to abandonment of the right to use Seminary Avenue by one of the two parties claiming it. Insofar as the facts are material to our disposition of the appeal, the parties stipulated to most of them at trial, and none of them is in dispute.[3]

Leonard and Waber own unregistered land abutting Grove Street and Seminary Avenue on which their single-family home is located. They use the portion of Seminary Avenue abutting their property as if it were within the boundary lines of their lots. There is a paved portion which they use as a driveway, and the remainder houses a dog pen, play equipment, and a shed. A fence, constructed in 1968, prevents ve-

---

[3]The respective parcels and Seminary Avenue appear on the sketch which accompanies this opinion.

hicle access from any other lot. When Leonard and Waber purchased the property in 1977, they knew that others had rights in Seminary Avenue.

One of the two plaintiffs, Michael F. Iodice, trustee of the MJ Realty Trust (Iodice), owns a large parcel of land, also abutting Grove Street and Seminary Avenue, which is the site of a 126-unit garden apartment complex. Iodice's parcel was the subject of Land Court registration proceedings in 1930. The portions of his land adjacent to Seminary Avenue are described in the certificates of title originally issued as a result of those proceedings as being bounded "by Seminary Avenue" or "by the southerly line of said Seminary Avenue." One of the original certificates also states, "[T]here is appurtenant to said land rights of way in said way in Seminary Avenue to Grove Street in common with others entitled thereto." The plan approved by the Land Court and filed with the original certificate of title shows Seminary Avenue extending out to Grove Street. In 1966, Iodice constructed a six-foot stockade fence between his property and the portion of Seminary Avenue used by Leonard and Waber as a driveway.

The other plaintiff, Lasell Junior College (Lasell), owns several parcels of land. Two of them, both abutting Seminary Avenue, were the subject of Land Court registration proceedings in 1931. The original certificate of title describes the land as being bounded "by Seminary Avenue." It further states, "[T]here is appurtenant to said land the right to use the whole of said Seminary Avenue in common with others entitled thereto." The approved plan filed with the original certificate of title shows the two lots on opposite sides of Seminary Avenue, and Seminary Avenue extending from the two lots out to Grove Street.

Leonard and Waber's predecessor in title had due notice of the Land Court registration proceedings and the interest claimed in Seminary Avenue but made no objection. Iodice and Lasell hold transfer certificates consistent with the original certificates issued by the Land Court.

Leonard and Waber presented evidence at trial tending to show that, but for the registration proceedings in connection with Lasell's and Iodice's land, no easement was ever created in favor of their predecessors in title over the disputed por-

tion of Seminary Avenue, and also that Leonard and Waber would have acquired ownership of the disputed portion of Seminary Avenue, free of any easement, by adverse possession commencing at least as early as 1966. The judge made no findings based upon that evidence. For purposes of this appeal, we assume that Leonard and Waber established: first, such open, notorious, exclusive, and adverse use for at least twenty years as to meet the requirements for adverse possession, see *Ryan* v. *Stavros*, 348 Mass. 251, 262 (1964); and second, that, although a 1893 subdivision plan showed Seminary Avenue as a way, extrinsic evidence concerning the situation at the time the easements are alleged to have been created did not support the existence of an easement appurtenant to either the Lasell or Iodice property, see *Prentiss* v. *Gloucester*, 236 Mass. 36 (1920); *Wellwood* v. *Havrah Mishna Anshi Sphard Cemetery Corp.*, 254 Mass. 350 (1926); *Goldstein* v. *Beal*, 317 Mass. 750 (1945); *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. 725 (1971). Those facts, however, are without consequence to the present proceedings. When land is registered, as the Lasell and Iodice parcels were, the rights recited in the resulting certificate of title are not subject to later collateral attack. See G. L. c. 185, § 45. The certificates of title unequivocally include reference to the easements now claimed.

The purpose of land registration proceedings under G. L. c. 185, §§ 26-56A, is "to provide a method for making titles to land certain and indefeasible." *McMullen* v. *Porch*, 286 Mass. 383, 388 (1934). See *Studley* v. *Kip*, 245 Mass. 244 (1923); *State St. Bank & Trust Co.* v. *Beale*, 353 Mass. 103, 107 (1967); *Tetrault* v. *Bruscoe*, 398 Mass. 454, 459 (1986). The effect of the issuance of the original certificates of title involved in this case, therefore, was to create rights to the claimed easements as if by express grant. See *Studley* v. *Kip*, 245 Mass. at 243; *Dubinsky* v. *Cama*, 261 Mass. 47, 55-56 (1927); *Cities Serv. Oil Co.* v. *General Dynamics Corp.*, 14 Mass. App. Ct. 131, 134-135 (1982). Having had due notice of the proceedings and having failed to object to them, Leonard and Waber's predecessor in title was bound by the

Land Court decree. So too are Leonard and Waber even if, had the right to the easements been litigated at the time of the original registration proceedings, a right to such easements may not have been recognized. As to Leonard and Waber's adverse possession claim, such a claim may not be made in derogation of a registered title. G. L. c. 185, § 53.

Leonard and Waber make three arguments why the registration proceedings and the resulting certificates of title should not preclude them from continuing to use the paper street free of any easements. First, based on policy considerations, they contend that an owner should not be permitted to burden another's unregistered land through the use of land registration proceedings. The owner of an unregistered parcel so burdened, they contend, would not be aware of the burden on his land even after a thorough record search through his chain of title. Leonard and Waber contend, therefore, that the owners at the time of registration of what are now the Lasell and Iodice properties had no right to register easements over what is now Leonard and Waber's land. The land deeded to Leonard and Waber, however, was described as being "by . . . Seminary Avenue." Neither they nor their predecessor in title at the time of the registration proceedings ever owned the entire width of Seminary Avenue adjacent to their property, which has always been shown as a way abutting the land now owned by Leonard and Waber. Moreover, since 1905 there has been nothing in the law to prevent an owner from registering an easement appurtenant to his land even if an abutting owner's rights may be affected. See St. 1905, c. 249, legislatively overruling *Minot* v. *Cotting*, 179 Mass. 325 (1901). See *Studley* v. *Kip*, 245 Mass. at 243; *Dubinsky* v. *Cama*, 261 Mass. at 56; G. L. c. 185, § 26. The remedy available to an abutter who objects to the establishment of an easement adversely affecting his land is to oppose the registration in the Land Court or to file a timely challenge to the decree on the basis of fraud. G. L. c. 185, § 45.

Second, Leonard and Waber contend that under *Walter Kassuba Realty Corp.* v. *Akeson*, 359 Mass. at 727-728, they have the right to show by extrinsic evidence that no

easement was ever created in that portion of Seminary Ave-
nue leading to Grove Street, a portion which has never been
more than a paper street. The *Kassuba* case is similar to the
instant case in that registration proceedings led to decrees on
the basis of which certificates of title were issued referring to
easements appurtenant to the locus, and the abutters to the
locus challenged the existence of the easements years later
based upon extrinsic evidence of circumstances existing at
the time the easements were allegedly created. On the basis
of that evidence, the court sustained the attack on the valid-
ity of the "registered" easements.

Unlike the references to the right of the owner of the locus
to use the paper streets in the decrees and the certificates of
title in the instant case, however, those in the *Kassuba* case
were imprecise and failed to define the easements clearly.
The decree and certificates in *Kassuba* state that the right to
use the two paper streets in common with others entitled
thereto was appurtenant to the locus, but the decree and cer-
tificates refer to a plan showing the two paper streets contin-
uing a short distance beyond the locus onto the property of
the abutter without any indication of the exact location,
dimensions, or full length of those ways.[4] By contrast to the
facts in *Kassuba*, the easements claimed in the instant case
are well-defined in the certificates of title, read in conjunc-
tion with the approved plans to which the certificates refer,
and extrinsic evidence is not necessary to define them. More-
over, the easements do not cross any land deeded to an abut-
ter. Indeed, there is no indication that the land incorporated
in Seminary Avenue at the time of the original registrations
ever appeared subsequently in any deed or on any plan as
other than a way.

Finally, Leonard and Waber contend that the trial judge
erred in failing to find that any right on the part of Lasell
and Iodice to use Seminary Road as access to Grove Street

---

[4]A separate plan, not part of the registration proceedings and not re-
ferred to in the certificates of title, showed the streets, but one did not even
lead to a public way, and the other did so only after taking a ninety degree
turn.

had been abandoned. Although a registered easement may not be extinguished by adverse possession, such an easement may be extinguished by abandonment. Compare *Dubinsky* v. *Cama*, 261 Mass. at 57.

> "Mere nonuser of an easement created by grant does not show abandonment. [Citations omitted.] There are no acts of the defendants or their predecessors in title manifesting a design to relinquish their rights of way. Ignorance or disregard of their easements is not an intentional renouncement and surrender of a known right. In order to establish abandonment of easements such as these there must be 'acts by the owner of the dominant estate conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence [citations omitted].' "

*Ibid.* See *Desotell* v. *Szczyqiel*, 338 Mass. 153, 159 (1958).

Without distinguishing between Lasell and Iodice, the judge viewed the evidence as establishing no more than their nonuse of Seminary Avenue since 1968. As to Lasell, the evidence warranted the finding that there had been no abandonment. There was evidence that since 1968 the disputed strip had, for practical purposes, been incorporated into the parcels presently owned by Leonard and Waber. There was also evidence that Lasell had other means of access to its property and had never used the disputed strip as a way. On the other hand, there was evidence that in 1977 Lasell was asked to release the easement but refused to do so. The evidence of Lasell's nonuse of the easement, and its acquiescence over a long period of time in the use of the strip by others for purposes inconsistent with the easement, was not sufficient to manifest an intent to relinquish its rights.

Iodice's situation, however, is different. Not only did Leonard and Waber prove Iodice's nonuse over a long period of time and acquiescence in the use made of the strip by others since 1968, but they also established the equivalent of an intentional surrender of the right to use the strip for access to

Grove Street. In 1966, Iodice constructed a fence separating his property from the disputed portion of the way. The fence remains in place and, together with the fence constructed in 1968 by Leonard and Waber's predecessors in title across Seminary Avenue, it blocks access from Iodice's property to the disputed strip. Considering the use of Iodice's property for garden apartments, and the roads constructed within the development to provide access to Grove Street, an intention on Iodice's part never again to make use of the easement was established. The facts presented at trial on the issue of abandonment were undisputed, and none was indicative of an intention on Iodice's part not to abandon the easement. In the absence of a separate finding by the judge on the issue of Iodice's abandonment, we may make the ultimate finding on that point. See *Bruno* v. *Bruno*, 384 Mass. 31, 35-36 (1981). In the circumstances, we conclude that the right to the easement was abandoned by Iodice. See *Lund* v. *Cox*, 281 Mass. 484, 492 (1933); *Sindler* v. *William M. Bailey Co.*, 348 Mass. 589, 592-593 (1965).

Accordingly, the judgment is modified to omit any reference to Iodice, and to dismiss Iodice's claim against Leonard and Waber. Otherwise the judgment is affirmed.

*So ordered.*