McCarthy *v.* Oak Bluffs.

TERRENCE P. McCARTHY & another[1] *vs.* TOWN OF OAK
BLUFFS & another.[2]

Suffolk. October 6, 1994. - December 21, 1994.

Present: LIACOS, C.J., WILKINS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Harbors. Real Property*, Harbors, Wharf, Littoral property, Registered
land. *Public Land. Practice, Civil*, Parties. *Res Judicata. Collateral
Estoppel.*

A Land Court judge correctly applied general principles of estoppel to bar
plaintiffs' assertion of title to a marine bulkhead and attached pier,
where the question of rights in the property in issue was resolved
against the plaintiffs' predecessors in interest by a valid 1960 decree in
a land registration proceeding involving land adjacent to the bulkhead
wherein the Commonwealth's rights in the disputed property, which
was established to lie below the mean low water mark, were acknowl-
edged. [233-237]

CIVIL ACTION commenced in the Land Court Department
on May 18, 1992.

The case was heard by *Robert V. Cauchon*, J., on motions
for summary judgment.

The Supreme Judicial Court granted a request for direct
appellate review.

*Brian M. Hurley* (*Donald R. Pinto, Jr.*, with him) for the
plaintiffs.

*Ronald H. Rappaport* (*Russell Beck* with him) for town
of Oak Bluffs.

*Irene L. Guild*, Assistant Attorney General (*Stephen Dick*,
Assistant Attorney General, with her), for the
Commonwealth.

[1]Simone B. McCarthy.
[2]The Commonwealth.

GREANEY, J. The plaintiffs, Terrence P. and Simone B. McCarthy, filed a verified complaint in the Land Court, naming as defendants the town of Oak Bluffs (town) and the Commonwealth, and seeking a declaration, pursuant to G. L. c. 185, § 1 (*k*) (1992 ed.),[3] and G. L. c. 231A (1992 ed.), that they are entitled to the exclusive use and control of a portion of a wooden plank deck attached to a bulkhead constructed around 1952 with funds from the Commonwealth and the town. The westerly side of the plank deck is washed by the waters of Oak Bluffs Harbor, formerly known as Lake Anthony, a great pond of the Commonwealth (harbor).[4] The plaintiffs are the owners of a parcel of registered land as shown on the plan which appears as an Appendix to this opinion. Under license by the Commonwealth, the plaintiffs maintain a pier (labelled "wharf" on the appendix), perpendicular to the plank deck, along which they dock boats for a fee. They have also permitted boats to dock in slips along the westerly side of the portion of the plank deck which lies approximately parallel to their registered land. According to their brief, the plaintiffs claim ownership rights in the bulkhead and the plank deck based on the common law property doctrines of accretion and fixtures.

By a special act of the Legislature, St. 1952, c. 474, the town was granted the right to control and administer use of the new bulkhead.[5] In October, 1991, through its board of selectmen, the town informed the plaintiffs that it had the

---

[3]General Laws c. 185, § 1 (*k*) (1992 ed.), provides, in pertinent part, that the Land Court shall have exclusive jurisdiction of "[a]ll cases and matters cognizable under the general principles of equity jurisprudence where any right, title or interest in land is involved . . . ."

[4]By an act of the Legislature, the name "Lake Anthony" was changed to "Oak Bluffs Harbor" in 1956. St. 1956, c. 228.

[5]The special act provided as follows: "Upon the completion of the timber bulkhead in Oak Bluffs harbor, constructed under authority of chapter twenty-nine of the resolves of nineteen hundred and fifty-one, the town of Oak Bluffs shall administer the facilities provided and may make such rules, regulations and charges for their use as may seem reasonable, and may lease portions of the structure and land abutting thereon and approaches thereto for terms not exceeding one year."

exclusive right to control use of the slips along the westerly side of the plank deck. This suit followed.

After a hearing on the plaintiffs' motion for summary judgment and the town's motion to dismiss (treated as a motion for summary judgment because matters outside of the pleadings were presented, see Mass. R. Civ. P. 12 [b], 365 Mass. 754 [1974]), a judge in the Land Court entered judgment in favor of the defendants on the ground that the Commonwealth holds title to the land west of the 1903 mean low water mark (see Appendix), and that, by special act, the Commonwealth had conferred on the town the exclusive right to control and administer use of the plank deck. See note 5, *supra*. We granted the plaintiffs' application for direct appellate review. We affirm the judgment.

The following undisputed facts are drawn from the materials submitted to the judge. In 1903, one Everett Joy, a predecessor in title to the plaintiffs, was granted a license to construct a bulkhead (old bulkhead) along a part of the shore of the harbor, fill in behind the bulkhead with material dredged from the harbor, and construct a wharf or pier perpendicular to the bulkhead. In 1951, the Legislature authorized the Department of Public Works (department) to construct a new bulkhead, parallel to, and approximately twenty to twenty-five feet to the west of the old bulkhead (new bulkhead). Res. 1951, c. 29.[6] Material dredged from the harbor was used to fill in the area between the new and old bulkheads. The wooden plank deck, built as an attachment to the new bulkhead, is used regularly by members of the general public.

After the new bulkhead was constructed, the Bergerons, the plaintiffs' immediate predecessors in title, continued to maintain and to operate a wharf extending into the harbor

---

[6]By Res. 1951, c. 29, the Legislature authorized the department to carry out various projects for the improvement of harbors and waterways in the Commonwealth, including the improvement of Oak Bluffs Harbor. The plaintiffs' verified complaint describes the construction of the new bulkhead "as part of a project to improve the navigability of Oak Bluffs Harbor."

under a series of licenses issued by the Commonwealth. Each one of these licenses contained the following restrictions:

> "Nothing in this license shall be construed as authorizing use or occupancy of land or flats not owned or controlled by the licensees except with the consent of the owner or owners thereof.[7]

> "Nothing in this license shall be construed as granting the right to cross the fill and pile platform [new bulkhead and plank deck] built by the Department of Public Works [in 1951] to reach said wharf of the licensees except in accordance with such understandings or agreements as may be made with the Town of Oak Bluffs relative thereto or by decree of the Land Court . . . ."

In 1956, the Bergerons filed a petition in the Land Court for registration of their land. In pertinent part, the petition described their land as bounded on the west by "Oak Bluffs Harbor." The petition listed the town and the Attorney General, for the Commonwealth, among the owners of adjoining land. The town entered an appearance in the registration proceedings and objected to registration of the Bergerons' land.

In connection with the Bergerons' land registration petition, a senior civil engineer employed by the department undertook an investigation "to establish a line of private ownership in Oak Bluffs' Harbor at the locus and also to determine if the pier, bulkhead and solid fill built by [the department] around 1951 was on land of the Commonwealth." In a report dated October 10, 1957, filed with the Land Court, the engineer recommended selection of the 1903 mean low water mark as the line representing the division between public and

---

[7]The license issued in 1970 read: "Nothing in this license shall be construed as authorizing *encroachment on property* not owned or controlled by the licensees except with the consent of the owner or owners thereof" (emphasis supplied).

private ownership of the land along the shores of the harbor. See *Boston Waterfront Dev. Corp. v. Commonwealth*, 378 Mass. 629, 646 (1979); *Potter v. Howe*, 141 Mass. 357, 359 (1886). See also 310 Code Mass. Regs. § 9.02 (1990) (defining "Historic Low Water Mark").[8] On the basis of an examination of various historic plans of the harbor, the engineer located the 1903 low water mark to the east, or landward, side of the old bulkhead.

The town then agreed to withdraw its objection to registration of the land on the basis of a stipulation between the town and the Bergerons in which it was agreed that "[t]he westerly boundary line of the petitioners['] land is established as the easterly side of the old bulkhead shown on petitioners['] plan so that petitioners have no title to any portion of the bulkhead."

On the basis of these materials, the Land Court judge to whom the registration petition was assigned wrote to the Bergerons' attorney, observing that, based on the report and the plan submitted by the senior civil engineer, it appeared that the petitioners did not own "the westerly portion of the land which bounds on Oak Bluffs Harbor or Lake Anthony," and that there seemed to be nothing in the examiner's report "which prove[d] that the petitioners ha[d] title to said westerly portion of the land." The judge questioned not only the Bergerons' right to claim to the waters of the harbor, he also questioned the town's right to stipulate that the Bergerons owned to the easterly side of the old bulkhead, because, he concluded, the triangular area between the old bulkhead and the line appearing as the 1903 mean low water mark was land of the Commonwealth. See Appendix.

---

[8] It appears that the 1903 low water mark was selected because no fill had been placed in the harbor prior to 1903, so that the low water mark in that year was, in fact, the natural low water mark. The plaintiffs agree that the 1903 mean low water mark represents the division between private property and land held by the Commonwealth in trust for the public. See, e.g., *Opinions of the Justices*, 383 Mass. 895, 902-906 (1981). Their claim to rights in the new bulkhead and the attached plank deck is based on the contention that the 1903 low water mark lies to the west of the position in which it is shown on the Appendix.

Subsequently, counsel for the Bergerons filed a motion to "amend [the] petition [for registration], by severing the same into two cases," stating that the parcel to the east of the 1903 mean low water line was proper for registration, while the claim to "that portion of the land shown on petitioners' plan which lies westerly of said line shown as 'mean low water' in 1903" raised questions about ownership not applicable to the eastern parcel. The motion for severance was granted, and a new case opened with respect to the land west of the line appearing as the 1903 mean low water mark. On October 3, 1960, a decree of registration was entered for the easterly parcel. The certificate of title described the Bergerons' land as bounded on the west "by low water mark 1903 in Oak Bluffs Harbor" as shown on the Appendix. The land was also described as subject to "any and all rights of the public in the use of said Oak Bluffs Harbor as a great pond."

In 1977, seventeen years after the registration decree entered, the severed case was dismissed for lack of prosecution.

It appears that the judge accepted the town's argument that principles of collateral estoppel precluded the plaintiffs from claiming an ownership interest in the new bulkhead and the plank deck. In support of his decision, the judge made reference to (1) the registration decree, which described the locus as bounded on the west by the 1903 low water mark of the harbor; (2) the stipulation by the Bergerons that the westerly boundary of their property was to the east, or landward, side of the old bulkhead; (3) the terms of the various licenses under which the Bergerons operated and maintained their pier after the new bulkhead was built; and (4) the law that private parties, absent a legislative act, cannot acquire property rights below the mean low water mark, through adverse use, laches, or estoppel. See G. L. c. 260, § 31 (1992 ed.); *Opinions of the Justices*, 383 Mass. 895, 904-905 (1981).

" 'A fundamental precept of common-law adjudication embodied in the related doctrines of collateral estoppel and res judicata, is that a "right, question or fact distinctly put in issue and directly determined by a court of competent juris-

diction . . . cannot be disputed in a subsequent suit between the same parties or their privies . . . ." ' *Montana* v. *United States*, 440 U.S. 147, 153 (1979), quoting *Southern Pac. R.R.* v. *United States*, 168 U.S. 1, 48-49 (1897)." *Fidler* v. *E.M. Parker Co.*, 394 Mass. 534, 539 (1985). *Miles* v. *Aetna Casualty & Sur. Co.*, 412 Mass. 424, 426-427 (1992). See Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim").

With respect to real property, "[a] judgment in an action that determines interests in real . . . property . . . [h]as preclusive effect upon a person who succeeds to the interest of a party to the same extent as upon the party himself." Restatement (Second) of Judgments, *supra* at § 43 (1) (b). See *Levy* v. *Cherry Hills Village*, 666 F. Supp. 201, 203 (D. Colo. 1987); *Ward* v. *Davis*, 298 Ark. 48, 50 (1989). These principles apply in cases involving registered land. See *Lyon* v. *Parkinson*, 340 Mass. 567, 568-569 (1960). Thus, to the extent the Bergerons would have been precluded by the decree entered in the registration proceeding from asserting a right to the new bulkhead and the attached plank deck, the plaintiffs also are barred from asserting such rights.

At issue is whether the Bergerons' interest in the land to the west of the 1903 low water mark on the plan (see Appendix) was actually litigated and decided during the course of the registration proceeding. See *Miles* v. *Aetna Casualty & Sur. Co.*, *supra* at 427. Pointing to the motion to sever registration of the parcels to the east and the west of that line, the plaintiffs contend that the question of ownership of the land to the west of the 1903 low water mark was reserved by means of the severance, and was neither fully litigated, nor essential to resolution of the registration proceeding resulting in the 1960 decree. They further argue that an affidavit they submitted in connection with their motion for summary judgment raised at least a genuine question as to whether the

1903 low water mark is properly depicted on the plan, and that this case was, therefore, inappropriate for resolution without inquiry into the facts. We disagree. Based on the establishment of the 1903 mean low water mark as the western boundary of the Bergerons' property, the terms of the stipulation signed by them, the terms of licenses that were issued, which clearly acknowledged the town's control of the new bulkhead, and the abandonment of the severed petition for registration that had been dormant for seventeen years, the judge correctly applied general principles of estoppel to bar the present lawsuit.

In 1956, the Bergerons sought to register their land as bounded on the west by Oak Bluffs Harbor. The new bulkhead and plank deck had been in existence for some four years. On its face, the petition for registration presented a clear claim by the Bergerons to ownership of the land up to and including the new bulkhead and the plank deck. The town and the Land Court judge who dealt with the registration viewed the petition as raising this claim. The town objected to entry of a decree in accord with the petition to protect its right to control use of the plank deck.

In connection with the petition, an investigation was made for purposes of locating the natural, or historic, low -water mark of the harbor, because, *as matter of law, this line would represent the division between private and Commonwealth, or public, ownership rights along the shore of the harbor.* See *Potter* v. *Howe, supra.* "The waters and the land under them beyond the line of private ownership are held by the State, both as owner of the fee and as the repository of sovereign power, with a perfect right of control in the interest of the public." *Michaelson* v. *Silver Beach Improvement Ass'n,* 342 Mass. 251, 253 (1961), quoting *Home for Aged Women* v. *Commonwealth,* 202 Mass. 422, 427 (1909). Documents associated with the registration proceeding and the licensing of the Bergerons' wharf, including, but not limited to the engineer's October 10, 1957, report, refer to the selection of the 1903 mean low water line as marking the division between public and private ownership rights along the shore

of the harbor.[9] Even now, the plaintiffs do not dispute that the 1903 mean low water mark of the harbor marks the division between private and Commonwealth property. In these circumstances, the designation of the 1903 mean low water mark as the westerly boundary of the Bergerons' property (rather than a course description), in the location shown on the 1960 registration plan, could not have been, as the plaintiffs suggest, "a matter of convenience." Rather, use of this line as the westerly boundary had independent effect. Use of this line was meant to, and did, establish the full extent of the Bergerons' (and, by extension, the plaintiffs') title to land along the harbor.

Nor do we perceive any unfairness in holding the plaintiffs to the legal effect of the 1960 registration decree. It seems clear that the parties to the registration proceeding understood the significance of the decree entered in 1960. After the engineer's report and plan were filed with the Land

---

[9]The engineer's report, dated October 10, 1957, states, in part: "Since Oak Bluffs Harbor is a great pond of the Commonwealth the line of private ownership would extend to 'ordinary low water.' . . . A 1903 plan of Oak Bluffs Harbor shows a Mean Low Water line prior to the placing of any fill in the pond. . . . As shown on the accompanying chalk, the line of private ownership (Mean Low Water) lies inside the 'line of the old bulkhead.' "

On September 23, 1958, the Land Court judge in the registration proceeding wrote to the Bergerons' attorney listing a series of matters that had to be addressed before a registration decree could enter. The judge expressed his opinion, based on the engineer's report and accompanying chalk, that the Bergerons' property extended only to the 1903 mean low water line as located by the engineer.

In the course of the registration proceeding, it was discovered that a sizeable portion of the Bergerons' existing wharf, or pier, was not covered by license. The Bergerons, therefore, petitioned for a license to maintain the existing wharf. In a recommendation for approval of this license, written by an assistant civil engineer of the department, it was noted that "[o]f interest in [the] Land Court case was determination of the line beyond which the Commonwealth owns the bed of this harbor." Some three years later, in 1961, the Bergerons applied for a license to rebuild and extend the wharf, or pier. In a recommendation for approval of the license, the same engineer noted "that a line [the 1903 mean low water mark] has been adopted which for all practical purposes represents the division between Commonwealth and private ownership."

Court, the Bergerons stipulated that they had no title or ownership interest in the land to which the new bulkhead was attached. That stipulation was made essentially contemporaneously with the establishment of the 1903 mean low water mark as the westerly boundary, is unambiguous in its language, and is absolutely irreconcilable with the plaintiffs' present claim. The agreement in 1960 by all parties upon the location of the 1903 low water mark became the sine qua non for the registration decree to be entered. Additionally, the licenses under which the plaintiffs, and their predecessors in title, have operated their wharf, or pier, have similarly acknowledged, for over thirty years, the town's right to control the new bulkhead.

The principal point on which the plaintiffs rely for the contention that the western boundary of their land was not resolved by entry of the 1960 decree is the severance of the petition with respect to the land lying west of the 1903 low water mark as appearing on the appended plan. Yet, despite the importance of the rights at stake, see *Boston Waterfront Dev. Corp.* v. *Commonwealth*, 378 Mass. 629, 630 (1979), the severed petition was never pursued. In view of the other factors indicating that the line dividing public from private ownership rights at the locus had been resolved by entry of the 1960 decree, and was understood to be resolved, the failure to prosecute the severed petition reflects an understanding that any attempt to do so would have been fruitless. We conclude that the question of rights in the disputed land was fully considered in the prior registration proceeding, and was resolved by entry of the 1960 decree. The 1960 decree was properly afforded preclusive effect by the judge.[10]

---

[10]In the Land Court, the plaintiffs also argued that their claim of right to control a portion of the plank deck depended in part on their implied rights under various licenses granted by the Commonwealth. They have not pressed the point before this court. We note briefly that the plaintiffs' use of the plank deck has been permissive under the licenses issued by the Commonwealth, and that, absent a legislative act, a private individual cannot acquire a right in property below the low water mark. See *Opinions of the Justices*, 383 Mass. 895, 901-906 (1981). See also G. L. c. 260, § 31 (1992 ed.).

"The purpose of land registration proceedings . . . is 'to provide a method for making titles to land certain and indefeasible.'" *Lasell College* v. *Leonard*, 32 Mass. App. Ct. 383, 387 (1992), quoting *McMullen* v. *Porch*, 286 Mass. 383, 388 (1934). As a general rule, a decree of registration is not subject to collateral attack. See *Tetrault* v. *Bruscoe*, 398 Mass. 454, 459 (1986); *Lasell College* v. *Leonard, supra*; *McDonnell* v. *Quirk*, 22 Mass. App. Ct. 126, 129 (1986). An entity, such as the town, or a person who possesses rights in property abutting other property which is the subject of a registration petition, and who has appeared in the resulting proceeding for the purpose of establishing his right in certain property, also has a right to rely on the resulting registration decree. The judgment entered in the Land Court is affirmed.[11]

*So ordered.*

---

[11]The plaintiffs do not appear to argue that a mistake was made when the 1960 decree was entered. See G. L. c. 185, § 114 (1992 ed.). We express no opinion as to whether, on the facts of this case, the plaintiffs could prove a mistake within the meaning of the statute. See *Cities Serv. Oil Co.* v. *General Dynamics Corp.*, 14 Mass. App. Ct. 131, 135-136 (1982).