THE 107 MANOR AVENUE LLC *vs.* MARK D. FONTANELLA
& another.[1]

No. 07-P-1410.

Suffolk. June 11, 2008. - April 29, 2009.

Present: KAFKER, VUONO, & GRAINGER, JJ.

*Easement. Real Property,* Easement, Registered land: easement.

In an action brought in Land Court by a plaintiff landowner seeking to eliminate
rights in a paper street which crossed through the middle of his property,
the judge erred in denying the plaintiff's motion for summary judgment
and ordering dismissal of the complaint, where the record demonstrated a
history of acquiescence indicative of the intention of the defendants, the
only neighboring property owners who claimed the right to use the road,
never to make use of the road as shown on the original 1940 plan, as well
as conduct on the part of the defendants that was inconsistent with the
exercise of their right to use the road as a private way. [158-160] KAFKER,
J., dissenting.

CIVIL ACTION commenced in the Land Court Department on
November 24, 2003.

The case was heard by *Charles W. Trombly*, J., on a motion
for summary judgment.

*Robert W. Carlson*, pro se.

*Robert F. Gundersen* for the defendants.

*William V. Hovey*, pro se, amicus curiae, submitted a brief.

VUONO, J. The plaintiff, Robert W. Carlson,[2] brought this
action seeking to eliminate rights in a paper street which crosses
through the middle of his property in the town of Wellesley.
Carlson's neighbors, Mark D. and Joan M. Fontanella (the Fon-
tanellas), opposed him. The street, shown on a 1940 subdivision

---

[1]Joan M. Fontanella.

[2]After his appeal was docketed in this court, Carlson transferred the property
to The 107 Manor Avenue LLC. His motion to substitute a party was allowed.
We continue to refer to Carlson as the plaintiff for the sake of clarity.

plan as Tyler Road, has never been constructed, accepted as a public way, or used as a private way, in Wellesley. The Fontanellas themselves use a portion of the way that passes over their property as an extension of their side lawn. A judge of the Land Court denied Carlson's motion for summary judgment and ordered dismissal of the complaint on the grounds that the Fontanellas had acquired registered rights to use Tyler Road when they purchased their property and the evidence of abandonment was insufficient. We reverse.[3]

*Background.* The following facts are not in dispute. In 2002, Carlson purchased property located at 107 Manor Avenue in Wellesley. The property is described in Carlson's certificate of title as "Lot 35 on Land Court Plan no. 17321C."[4] Although there is currently a single-family residence on the lot, Carlson would like to replace it with a new residence but cannot do so since Tyler Road, at least on paper, covers most of his lot. The Fontanellas own adjacent property described in their certificate of title as lot 45 on a plan approved by the Land Court numbered 17321G. The Fontanellas' property, on which their residence is located, has frontage and a driveway on Manor Avenue in Wellesley.

Land Court plans numbered 17321C and 17321G each depict Tyler Road as a paper street, which begins on the sideline of Manor Avenue, extends into the Fontanellas' side yard and through the middle of Carlson's lot, and continues across and beyond the town line between Wellesley and Weston at the rear of Carlson's property. Tyler Road first appeared in Land Court files on a plan submitted in August, 1940, which subdivided a large parcel of newly registered land located in both Wellesley and Weston.[5] Carlson's lot was created in 1954 when the land was re-subdivided. The Fontanellas' lot was created in 1975 after

---

[3]We acknowledge the brief submitted by amicus curiae William V. Hovey.

[4]Carlson's certificate of title, issued from the Norfolk County registry district of the Land Court, does not contain a metes and bounds description.

[5]The judge took judicial notice of the documents on file in the Land Court pertaining to the original registration case entered in March, 1940. See *Brookline* v. *Goldstein*, 388 Mass. 443, 447 (1983). Since the land was located in two different counties, two judgments and plans, one for the Weston property and one for the Wellesley property, were entered in March, 1940. Neither of these plans delineated Tyler Road.

a second re-subdivision. All of the owners of registered lots within the subdivision, including, eventually, the Fontanellas, acquired the right to use the ways and streets as shown on the 1940 plan when they purchased their properties.[6]

Tyler Road became a major road providing frontage for many of the newly registered lots in the Weston subdivision, but it was never built in Wellesley. As previously noted, Tyler Road has never been used as a road, improved as a public or private way, or accepted by the town of Wellesley. At the point on Carlson's northerly boundary line where Tyler Road theoretically crosses into Weston, it is blocked by a stone wall that has existed since 1940. In addition, private parties have constructed a stockade fence that makes passage between the two towns at that juncture impossible.[7] The entire area at issue, furthermore, has been fully incorporated into the lawns of both parties. In Carlson's case, Tyler Road also crosses over a portion of his driveway.

The town of Wellesley stipulated that it had no objection to the discontinuance of Tyler Road. At the time of the hearing on Carlson's motion for summary judgment, the Fontanellas were the only property owners claiming the right to use Tyler Road.[8]

[6]The Fontanellas' certificate of title provided, in pertinent part, as follows: "The above described land is subject to and has the benefit of the rights of Way set forth in Documents Nos. 82219 and 86036, so far as applicable." Document 86036 is a grant from the original developer, Neillian Realty Co., to various grantees "and to all owners at any time of any of the lots shown on plans hereinafter referred to, or any subdivision thereof," of "[a] right to use the streets and ways shown on plan dated January 1940, filed with Middlesex South Registry District of the Land Court, as Plan No. 17321-B, Sheet One, . . . and on plan dated August 22, 1940, filed with Norfolk Registry District of the Land Court, as Plan No. 17321-B, Sheet Two. The intent of this instrument is to create a right of way as appurtenant to all lots shown on said plans or which may be shown on any future subdivision thereof over the streets and ways on said plans."

[7]The stone wall appears in the original Land Court registration case filed in 1940. The record is silent as to when the stockade fence was built, who constructed it, and whether it has been maintained.

[8]Since the elimination of Tyler Road affects registered land, the judge ordered a title examination to determine the identity of all interested land owners. The owners of approximately thirty-four lots, mostly located in the Weston subdivision, were subsequently served with Carlson's complaint. With the exception of the Fontanellas, only one other property owner, who later entered into a judgment by agreement, filed an answer. The other property owners were subsequently defaulted pursuant to Mass.R.Civ.P. 55(a), 365 Mass. 822 (1974).

*Discussion.* In his decision denying Carlson's motion for summary judgment, the judge noted that the Fontanellas had never used Tyler Road but held that Carlson had failed to establish that the Fontanellas intended to abandon their rights in the way.[9] The judge's ruling rests on his view that the evidence established no more than the Fontanellas' nonuse of the paper street. Nonuse, by itself, however long continued, will not operate to extinguish an easement. *Desotell* v. *Szczygiel,* 338 Mass. 153, 159 (1958). We disagree with the judge's conclusion, however, because the record establishes more than mere nonuse of the easement.

Whether there has been an abandonment of an easement is a question of intention to be ascertained from the surrounding circumstances and the conduct of the parties. *Sindler* v. *William M. Bailey Co.,* 348 Mass. 589, 592 (1965) ("Abandonment is a question of intention. It can be shown by acts indicating an intention never again to make use of the easement in question") (citations omitted). Our review of the record here reveals a history of acquiescence indicative of the Fontanellas' intention never to make use of Tyler Road as it is shown on the 1940 plan. Since acquiring their property in 1992, the Fontanellas have used Manor Avenue (for ingress and egress, etc.) exclusively. They have neither taken any steps to remove the stone wall or stockade fence blocking access to the easement from Weston nor objected to Carlson's or his predecessors' use of the area as a lawn and driveway.

Our cases indicate that failure to protest acts which are inconsistent with the existence of an easement, particularly where one has knowledge of the right to use the easement, permits an inference of abandonment. See *Lund* v. *Cox,* 281 Mass. 484, 492-493 (1933) (physical obstructions making use of easement impossible combined with lack of objection over extended period of time sufficient to raise presumption that easement right abandoned); *Sindler,* 348 Mass. at 593 (inference that easement has been abandoned was warranted where all owners other than

---

[9]As to whether the easement was extinguished, we agree with the judge that Carlson has the burden of proof, as he affirmatively asserted that the easement had been extinguished. See *New York Cent. R.R. Co.* v. *Swenson,* 224 Mass. 88, 92 (1916).

servient landowner both ceased using right of way for thirty-five years and failed to object to physical obstruction enclosing disputed area). Cf. *First Natl. Bank of Boston* v. *Konner*, 373 Mass. 463, 466-467 (1977) (profit à prendre held not abandoned where dominant landowner had in the past undertaken use of land as envisioned by profit agreement and where construction of a pond on small portion of dominant tenement was deemed only a partial inconsistent use insufficient to show requisite intent to abandon).

The Fontanellas have furthermore engaged in conduct inconsistent with the exercise of their right to use Tyler Road as a private way. They concede, as they must, that they use the portion of Tyler Road which curves through their side yard as if it were an extension of their lawn.[10] In *Lasell College* v. *Leonard*, 32 Mass. App. Ct. 383 (1992), we held that the evidence of abandonment was sufficient where the owner of property abutting a paper street had never used the area as a way, had acquiesced over a long period of time in the use of the area as a lawn and driveway by the adjacent landowner, and had engaged in an affirmative act inconsistent with the use of the easement.[11] While in that case the affirmative act consisted of erecting a stockade fence separating his property from the way, see *id.* at 391, the Fontanellas' affirmative act of appropriating a portion of the way for use as their yard is likewise sufficient. One does not ordinarily maintain an area as a lawn with the intention of using it, and allowing others to use it, as a road. See *Proulx* v. *D'Urso*, 60 Mass. App. Ct. 701, 704 n.2 (2004), a case involving the relocation of an easement established by deed, wherein this court observed that "*[a]ny deliberate conduct* on the part of the dominant owner inconsistent with the continued existence of the easement may operate as abandonment" (emphasis added).

We further observe that Tyler Road was originally created in 1940 to provide access from the Wellesley side of the subdivision

---

[10]That the Fontanellas have incorporated only a portion of the easement into their lawn is not significant in our view.

[11]By contrast, in the same case we held that another landowner, Lasell College, had not relinquished its rights in the way because it had expressly refused to release the easement when asked to do so on a previous occasion and had not engaged in any affirmative acts indicating an intent to abandon. *Id.* at 390.

to the Weston side but that, at least since 1954, Manor Avenue has been laid out as a continuous public way providing frontage to the lots in Wellesley and thus rendering Tyler Road obsolete. While the judge correctly ruled that lack of necessity or obsolescence will not, alone, suffice to extinguish an express easement, see *Emery* v. *Crowley*, 371 Mass. 489, 495 (1976), we nonetheless consider evidence of obsolescence as further support for our conclusion that Tyler Road has been lost by abandonment. It may be, as the dissent notes, that extension of a lawn has not been held to constitute abandonment in circumstances considered by previous cases. But it has long been established that the intent to abandon is determined on a case by case basis.

The conclusion we reach in this case is consistent with the trend toward allowing the elimination of useless easements generally.[12] The easement as it now exists on Carlson's land does not provide access to anything. There is no evidence that anyone has ever traveled over Carlson's land or, for that matter, over the Fontanellas' land to reach Tyler Road in Weston or Manor Avenue in Wellesley. During oral argument counsel for the Fontanellas candidly informed us that the Fontanellas oppose the discontinuance of Tyler Road primarily because they are concerned that construction of a new home on Carlson's lot will cause their basement to flood. See *White* v. *Peabody Constr. Co.*, 386 Mass. 121, 126 (1982) ("an admission may be established by a statement of counsel at oral argument"). Given the circumstances, we believe that no one, least of all the Fontanellas, has the intention to use the paper street other than for the purpose of controlling development of Carlson's lot.

Accordingly, the judgment is reversed, and the matter is remanded to the Land Court to issue an amendment to Carlson's certificate of title and a declaration of rights consistent with this opinion.

*So ordered.*

---

[12]See Restatement (Third) of Property § 7.10(1) (2000) ("When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable, or would not be effective, a court may terminate the servitude").

KAFKER, J. (dissenting). I respectfully dissent. In my view, summary judgment was not appropriate for the plaintiff based on the limited record that we have been presented.

As the majority acknowledges, abandonment is a question of intent, and that intent must be established clearly. *Desotell* v. *Szczygiel*, 338 Mass. 153, 158 (1958). "In order to establish abandonment of easements . . . there must be 'acts by the owner of the dominant estate conclusively and unequivocally manifesting either a present intent to relinquish the easement or a purpose inconsistent with its further existence.' " *Dubinsky* v. *Cama*, 261 Mass. 47, 57 (1927), quoting from *Parsons* v. *New York, N.H. & H.R.R.*, 216 Mass. 269, 272 (1913). See *Willets* v. *Langhaar*, 212 Mass. 573, 575 (1912). Mere nonuse, however long it continues, does not establish intent to abandon. *Delconte* v. *Salloum*, 336 Mass. 184, 188 (1957). So, for example, the failure to clear the easement area of natural trees and brush for thirty-three years was found insufficient to establish an intention to abandon easement rights. *Desotell* v. *Szczygiel*, 338 Mass. at 159. See generally *Dubinsky* v. *Cama*, 261 Mass. at 57, and cases cited. Generally, intent to abandon requires affirmative actions by the dominant owners inconsistent with use of the easement. In the instant case the only affirmative act by the dominant owners was extension of their yard into the portion of the easement that falls on their property. I am aware of no Massachusetts cases in which this type of lawn enlargement was found sufficient to establish abandonment.

This was also not a case where permanent obstructions to the use of the easement were undisputedly constructed after the creation of the easement. See, e.g., *Lund* v. *Cox*, 281 Mass. 484, 492-493 (1933) ("Physical obstructions . . . rendering use[] of the easement impossible . . . , combined with the great length of time during which no objection has been made to their continuance nor effort made to remove them, are sufficient to raise the presumption that the right has been abandoned . . ."). In the instant case the stone wall at the town line predates the creation of the easement, and we have no information in the record regarding when the wooden stockade fence was constructed.[1] These facts may only establish that the easement holders (and their

---

[1]The appellate record is not as clear as it should be on this point. See *ante*

predecessors in interest) have not yet chosen to exercise their rights under the easement to have them removed. An easement holder has the right to enter on the servient estate for the purpose of constructing a way if it has not already been constructed. See *Walker* v. *E. William & Merrill C. Nutting, Inc.*, 302 Mass. 535, 543 (1939).

*Lasell College* v. *Leonard*, 32 Mass. App. Ct. 383 (1992), on which the majority relies, does not support the majority's holding. In that case, two easement holders had acquiesced for a long period in the use by the servient owner of a portion of the easement area as though it was his yard. We held that one of the two owners (Iodice) had evidenced an intent to abandon his rights in the easement, but that intent was established by an affirmative act: the erection of a fence separating his property from the disputed portion of the way. See *Lasell College*, 32 Mass. App. Ct. at 390-391. The other easement holder (Lasell College) did not evidence the requisite intent to abandon its easement by its mere acquiescence in the defendants' use of the disputed portion of the way, even though they used a portion of the area as a driveway and erected a dog pen, play equipment, and a shed on the remainder. See *id.* at 384.[2]

Finally, the majority's reference to the Restatement (Third) of Property § 7.10 (2000) is misplaced. The present case does not involve "a change [that] has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created." *Id.* at § 7.10(1). The easement could still be used to provide an alternative means of access and egress to the defendants' property.[3]

---

at 157 n.7. The uncertainties reflected here and in note 7 of the majority opinion appear to preclude summary judgment from being properly allowed for the defendants as well. As we have a poor record and abandonment involves a fact question regarding intent, it is not surprising that a trial may be required to resolve this dispute. See, e.g., *King* v. *Murphy*, 140 Mass. 254, 254 (1885); *Willets* v. *Langhaar*, 212 Mass. at 574.

[2]The college also refused to release the easement when asked to do so on one occasion approximately fifteen years prior to the dispute at issue in the case. *Id.* at 390.

[3]Arguably, in these circumstances, a genuine issue of material fact has been raised regarding whether the defendants have abandoned the use of the way as an alternative means of access or egress and were only seeking to protect the

In sum, I consider the majority's holding to represent a departure from Massachusetts law that risks creating uncertainty in an area in which certainty and predictability are significant and valuable forces. I accordingly dissent.

---

easement as a means of preserving green space. Nevertheless, without deposition testimony or affidavits to that effect, it is difficult to conclude that this is a reasonable inference.