## Williams Bros. Inc. of Marshfield *vs.* George A. Peck & others[1] (and a companion case[2]).

No. 11-P-1203.

Suffolk. February 8, 2012. - April 30, 2012.

Present: Kantrowitz, Berry, & Vuono, JJ.

*Real Property,* Registered land, Registered land: easement, Certificate of title, Easement, Merger. *Easement.*

A Land Court judge properly determined that an easement over the plaintiff's property, appearing on the defendants' certificate of title to registered land, had been extinguished when the two parcels in question had earlier come into common ownership before again being separated, where the registered land system, G. L. c. 185, § 26-56A, did not displace the common-law principle of merger, and where no evidence suggested that the easement had been created anew after the merger. [684-688]

Civil action commenced in the Land Court Department on October 27, 2006.

Civil action commenced in the Superior Court Department on January 4, 2007.

After transfer of the Superior Court action to the Land Court, the cases were heard by *Keith C. Long,* J., sitting under statutory authority, and a motion to amend judgment and for reconsideration was considered by him.

*Richard M. Serkey* for George A. Peck & others.

*Robert W. Galvin (Mark A. Lowery* with him) for Williams Bros. Inc. of Marshfield.

Kantrowitz, J. In this land use case, we are confronted with

---

[1]Marjorie E. Peck; Telmark, LLC; USDA Farm Service Agency; and Mutual Bank.

[2]Williams Bros. Inc. of Marshfield *vs.* George A. Peck, Marjorie E. Peck, and Curt F. Dow, individually and doing business as C.F. Dow.

the clash of two basic principles. The first is that an owner may rely on information contained in a certificate of title for registered land. The second is that appurtenant easements are extinguished when the dominant and servient estates are merged.

We are asked to consider whether an easement over nonregistered land, benefiting a parcel of registered land and listed on the certificate of title as an appurtenant right, was nonetheless terminated by the doctrine of merger when the two parcels briefly came into common ownership. We conclude that it was. In that respect, we agree with the Land Court judge and affirm the judgment.

*Procedural history.* Williams Bros. Inc. of Marshfield (Williams) brought suit in the Land Court against George and Marjorie Peck and others, seeking a declaratory judgment that an easement over its property was extinguished by merger.

The Land Court judge[3] determined that the easement had indeed been terminated when the parcels came into common ownership, and he ordered the easement language struck from the Pecks' certificate of title.[4] This appeal followed.

*Facts.* The Pecks purchased their parcel (the Peck parcel) on May 16, 1986, to be used as a cranberry bog. Their certificate of title lists the following easement rights over the parcel now belonging to Williams (the Williams parcel): (1) a right of way, (2) the right to take sand,[5] (3) the right to build bog houses, and (4) the right to cut trees if they shade the cranberry bog. The Peck parcel is registered land; the Williams parcel is not. The registration decree for the Peck parcel is dated 1942 and also lists the easement rights.

Unbeknownst to the Pecks, the parcels had previously come under the common ownership of the Edgewood Trust (Edge-

---

[3]Because the complaints included claims outside the jurisdiction of the Land Court, the judge was also designated a judge of the Superior Court for the purpose of hearing them. See G. L. c. 211B, § 9.

[4]The judge also awarded Williams $3,168 from the Pecks and Curt Dow, jointly and severally, for damages related to the cutting of trees. The parties make no argument about this award on appeal.

[5]Sand is necessary for the cultivation of cranberry bogs. As the judge noted, the easement at issue here was "extraordinarily intrusive" in that it gave the Pecks the right to excavate sand and cut down trees from the Williams parcel for the purposes of cultivating a cranberry bog on their own parcel.

wood) on April 30, 1976. Just four months later, on September 2, 1976, the land was again severed, when Edgewood conveyed what is now the Williams parcel to Ravenbrook Trust (Ravenbrook), a straw, which immediately conveyed the parcel to Williams on that same date. Neither the deed from Edgewood to Ravenbrook nor from Ravenbrook to Williams referenced the easement.[6] The other parcel, meanwhile, was eventually conveyed to the Pecks ten years later, with the easement rights still listed on its certificate of title.

Believing that they possessed a valid easement, the Pecks removed trees over 1.6 acres of the Williams parcel, in preparation for sand excavation. They also removed sand from two other areas of the Williams parcel, creating sand pits. Williams sued, contending that any easement over its land was terminated due to the common ownership that occurred in 1976, and that the easement had not been reinstated.

*Discussion.* "As the party claiming an easement or right of way, it is well settled that [the dominant owner] bears the burden of proving its existence." *Duddy* v. *Mankewich,* 75 Mass. App. Ct. 62, 66 (2009). Under the common-law doctrine of merger, easements are extinguished "by unity of title and possession of the two estates [the dominant and the servient], in one and the same person at the same time." *Ritger* v. *Parker,* 8 Cush. 145, 146 (1851). "When the dominant and servient estates come into common ownership there is no practical need for the servitude's continued existence, as the owner already has 'the full and unlimited right and power to make any and every possible use of the land.' " *Busalacchi* v. *McCabe,* 71 Mass. App. Ct. 493, 498 (2008), quoting from *Ritger* v. *Parker, supra* at 147. Once extinguished, easement rights cannot be "revived" merely by

---

[6]The judge found that Williams intended to build a subdivision on the Williams parcel. Clearly, that would not have been possible if the easement was in effect, which explains perhaps why from 1976 to 1986 the easement appears not to have been used. The development plans, however, never materialized because of problems with recording the subdivision plan. When the Pecks purchased their parcel, they took advantage of the easement. Because the Williams parcel had been largely unused, they claimed a lack of knowledge as to its use. We note that there was much confusion at the time as evidenced by the Pecks mistakenly being given land by Edgewood in 1986 that actually belonged to Williams. When the error was discovered, the Pecks deeded that land to Williams in 1998.

severing the dominant and servient estates. *Cheever* v. *Graves*, 32 Mass. App. Ct. 601, 607 (1992). They "must be created anew by express grant, by reservation, or by implication." *Ibid.* Under the common-law theory of merger, therefore, the judge correctly determined that the easement benefiting the Peck parcel was extinguished when the two parcels came into common ownership in 1976 unless some aspect of the registered land system precludes that result.

The registered land system, G. L. c. 185, §§ 26-56A, was designed to provide certainty in title. See *Lasell College* v. *Leonard*, 32 Mass. App. Ct. 383, 387 (1992), quoting from *McMullen* v. *Porch*, 286 Mass. 383, 388 (1934) (purpose of land registration is "to provide a method for making titles to land certain and indefeasible"). See also *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 44 (1980) ("underlying purpose of title registration is to protect the transferee of a registered title"). See and compare G. L. c. 185, § 46. Section 54 of G. L. c. 185, as appearing in St. 1996, c. 481, § 4, provides that a certificate of title "shall be conclusive as to all matters contained therein, except as otherwise provided in this chapter." As the judge pointed out, however, the protections of the registration system primarily are designed to protect the certificate holder from encumbrances on the registered parcel. For example, G. L. c. 185, § 46, as appearing in St. 1981, c. 658, § 26, provides that the certificate holder shall be "free from all encumbrances except those noted on the certificate." Similarly, G. L. c. 185, § 47, as appearing in St. 1981, c. 658, § 27, states that a judgment of registration shall contain a description of all "mortgages, easements, liens, attachments and other encumbrances . . . to which the land or the owner's estate is subject." In fact, we have interpreted the statute as requiring "only easements to which the registered land is subject be set out in the certificate of title" and "[e]asements benefiting the property need not be noted." *Duddy* v. *Mankewich*, 75 Mass. App. Ct. at 64 n.6.

The statute specifies some instances where land registration bars changes to title by certain common-law mechanisms, such as adverse possession, implication, or necessity; extinguishment of appurtenant easements by merger is not among them. See G. L. c. 185, § 53 ("No title to registered land, or easement or

other right therein, in derogation of the title of the registered owner, shall be acquired by prescription or adverse possession. Nor shall a right of way by necessity be implied under a conveyance of registered land"). Additionally, G. L. c. 185, § 77, provides that "[r]egistered land, and ownership therein, shall in all respects be subject to the burdens and incidents attaching by law to unregistered land," and c. 185 shall not "change or affect in any way any other rights or liabilities created by law and applicable to unregistered land, except as otherwise expressly provided in this chapter." Thus, extinguishment by merger is not included in the statute among the enumerated theories barred from application by the registration system. We regard this absence as significant.

Although by its very nature the registration statute displaced some common-law principles, in general, a statute is not to be interpreted "as effecting a material change in or a repeal of the common law unless the intent to do so is clearly expressed." *Brear* v. *Fagan*, 447 Mass. 68, 72 (2006), quoting from *Pineo* v. *White*, 320 Mass. 487, 491 (1946). There is no evidence that the Legislature specifically intended to abrogate the common-law doctrine of merger when it enacted the registration statute. The Legislature was at liberty to include a provision protecting easements appurtenant to registered land from extinguishment by merger occurring after the original registration if it desired. It did not do so. Absent specific language, we will not presume legislative intent and will not read the statute to override the common law in this instance.

We recognized in *Lasell College* v. *Leonard*, 32 Mass. App. Ct. at 390, that "[a]lthough a registered easement may not be extinguished by adverse possession, such an easement may be extinguished by abandonment." In doing so, we acknowledged a distinction between common-law theories that are expressly enumerated in G. L. c. 185 and those that are not. That the easement in *Lasell College* continued to be noted on the plaintiffs' certificates of title did not prevent us from concluding that with regard to one of the plaintiffs, the easement was extinguished by specific acts indicating abandonment. *Id.* at 391.

As we did in *Lasell College, supra*, here we recognize another

exception to the general rule that the holder of registered land can rely without any additional inquiry on the legitimacy of all provisions listed in the certificate. We agree with the Land Court judge that the registration system provides only those protections to registered land that are enumerated in the registration system's provisions. Here, the dominant and servient parcels were merged in 1976, meaning that under the common law, the easement was at that point extinguished. That the Peck parcel is registered land does not negate the destruction of the easement by merger.

We recognize that problems might exist for title examiners in such situations. Problematically to the registered land system, it is conceivable that easement rights might appear on a certificate even if they are no longer valid. Intervening events, such as abandonment, may have rendered them extinguished. Here, it appears that the Pecks had no information, other than the knowledge that would have resulted from a thorough title search, that would have led them to believe that their easement had been extinguished. The price paid for the Peck parcel indicates that the Pecks expected full use of the parcel — including the cranberry bog, which would require the listed easement rights. At the same time, because the Williams and the Peck parcels were previously under common ownership, and because the prior owner of the Williams parcel continued to possess the servient property with no reference to an easement, Williams had little reason to expect that the parcel had encumbrances on it. Recognizing this dilemma, the judge below, correctly in our view, noted that "it makes perfect sense that the purchaser of the parcel with the purported appurtenant right should be the one with the burden to ensure it still exists if he or she intends to rely on it. It is [the purchaser] who will be advantaged by those rights." Moreover, as the Land Court judge observed, the administration of the land registration system is not equipped to examine the possibility that appurtenant easements may previously have been extinguished by merger when issuing a new certificate of title incident to a property transfer.

In conclusion, we hold that common-law merger between a registered dominant parcel and unregistered servient parcel trumps appurtenant easements listed in the certificate of title.

No evidence suggests that the easement was created anew after the merger.[7]

*Judgment affirmed.*

*Order denying motion to amend judgment and for reconsideration affirmed.*

---

[7]We need not dwell on the Pecks' claim that an easement by implication was created over the unregistered Williams parcel, as this argument was not raised below. Accordingly, it is waived. See *Carey* v. *New England Organ Bank*, 446 Mass. 270, 285 (2006); Mass.R.Civ.P. 8(c), 365 Mass. 749 (1974); Mass.R.Civ.P. 12, 365 Mass. 754 (1974). Even if it had not been waived, the Pecks would have fared no better. We agree with the judge below that "this is not a situation in which the easement rights can reasonably be implied . . . . [I]t is 'more difficult' to imply an easement benefiting the grantor since the grantor is in control of the language of the grant and has the statutory obligation explicitly to disclose encumbrances he knows about, especially the ones he himself seeks to retain for his own benefit. Moreover, there was no persuasive evidence that sand and other rights to the Williams [parcel] were necessary or vital to the continuation of cranberry growing on the Peck parcel. Sand can come from elsewhere and . . . is often not even wanted or needed for bog maintenance."